827 P.2d 1160

Robert BEITZEL, Plaintiff–Respondent,

v.

City of Coeur d'Alene, General Telephone Company of the Northwest, Inc., and Coeur d'Alene Asphalt, Defendants,

and

Sheldon V. ORTON and Nancy Orton, individually and as Trustees for Orton Utilities Construction, Inc., Defendants–Appellants.

Robert BEITZEL, Plaintiff–Respondent,

v.

CITY OF COEUR d'ALENE and General Telephone Company of the Northwest, Inc., Defendants–Appellants,

and

Sheldon V. ORTON and Nancy Orton, individually and as Trustees for Orton Utilities Construction, Inc., and Coeur d'Alene Asphalt, Defendants–Respondents.

CITY OF COEUR d'ALENE and General Telephone Company of the Northwest, Inc., Crossclaimants–Appellants,

v.

Sheldon V. ORTON and Nancy Orton, individually and as Trustees for Orton Utilities Construction, Inc. and Coeur d'Alene Asphalt, Crossdefendants–Respondents.

Nos. 18069, 18070.

Supreme Court of Idaho, Coeur d'Alene, Oct. 1991 Term.

Feb. 19, 1992.

Eismann Law Office, Coeur d'Alene, for defendant-respondent Orton. Samuel D. Eismann, argued.

Charles W. Hosack, Coeur d'Alene, for defendants-appellants City of Coeur d'Alene and General Tel. Co.

Howard & Owens, Coeur d'Alene, for plaintiff-respondent Beitzel. Kenneth B. Howard, Jr., argued.

Quane, Smith, Howard & Hull, Coeur d'Alene, for defendant-respondent Coeur d'Alene Asphalt. Mark A. Lyons, argued.

JOHNSON, Justice.

This is a personal injury case that also involves the right to indemnification. We affirm the judgment in favor of the injured party and rule that two of the parties held liable for the injuries are entitled to be indemnified by the other two parties.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

At approximately 12:30 a.m. on a Monday morning, Robert Beitzel was injured when he drove his motorcycle into an unmarked, unbarricaded three-inch deep trench on a public street in Coeur d'Alene. The trench was part of a project to install underground telephone lines for General Telephone Company of the Northwest, Inc. (GTNW). The City of Coeur d'Alene (the city) issued a permit to GTNW for the purpose of laying conduit containing the lines. GTNW contracted with Orton Utilities Construction, Inc. (Orton) to install the lines and with Coeur d'Alene Asphalt (CDAA) to replace the asphalt. In its contract with GTNW, Orton agreed to indemnify GTNW for any liability due to personal injury to any person resulting from the work, unless the injury was caused solely by the negligence of GTNW.

The procedure for installation of the conduit consisted of Orton removing the asphalt, digging a trench several feet deep and several feet wide, placing the conduit at the bottom of the trench, and backfilling the trench to surface level with gravel. Orton was responsible for providing flaggers, signs, cones, signals, and barricades at the site. Once Orton completed its installation and backfilling for a distance of 400 feet, CDAA removed three inches of backfill and laid an asphalt strip to restore the original pavement surface. CDAA was responsible for signalling and barricading the site during its portion of the project. The city and GTNW each had an inspector to inspect the work on the project.

Beitzel sued the city, GTNW, Orton, and CDAA. The city tendered its defense to GTNW, which accepted the tender. GTNW tendered the defense of the city and GTNW to Orton, which rejected the tender. The city and GTNW cross-claimed against Orton and CDAA, seeking indemnification from Orton under the contract and from CDAA under common law principles.

Following the trial, the jury returned a special verdict awarding Beitzel $300,-000.00. The jury found that there was no negligence of Beitzel that was a proximate cause of his injuries and that the other parties contributed to the cause of the accident in the following percentages:

| | |
|---|---|
| The city | 35% |
| GTNW | 30% |
| Orton | 25% |
| CDAA | 10% |

The trial court entered judgment in favor of Beitzel against the city, GTNW, Orton, and CDAA, jointly and severally. The trial court also entered a judgment for indemnification in favor of the city and GTNW against Orton and CDAA, jointly and severally, for any portion of the judgment in favor of Beitzel satisfied by either the city or GTNW.

The city, GTNW, Orton, and CDAA moved for judgment not withstanding the verdict (j.n.o.v.) and for a new trial pursuant to I.R.C.P. 59(a)(5), (6), and (7), and, in the alternative, for a remittitur of damages. Orton and CDAA moved to alter or amend the judgment for indemnification.

The trial court denied the motions for j.n.o.v., for a new trial, and for a remittitur of damages. The trial court granted the motions to amend the judgment for indemnification, finding that the city and GTNW were not entitled to indemnification from Orton and CDAA.

The city, GTNW, and Orton appealed from the judgment in favor of Beitzel. The city and GTNW appealed from the trial court's denial of indemnification from Orton and CDAA.

## II.

### THE TRIAL COURT CORRECTLY DENIED THE MOTIONS FOR J.N.O.V.

The city, GTNW, and Orton assert that the trial court should have granted their motions for j.n.o.v., because there was insufficient evidence for the jury to apportion the degrees of negligence as it did. We disagree.

■ In reviewing the trial court's denial of the motions for j.n.o.v., we must review the record of the trial and draw all infer-

ences from the evidence in a light most favorable to Beitzel to determine if there was substantial evidence to justify submitting the case to the jury. *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986).

The trial court instructed the jury that each of the four parties sued by Beitzel had some duty to protect those who used the street where the accident occurred. The city had a nondelegable duty to place and maintain traffic control devices necessary to regulate, warn or guide traffic in the construction area. GTNW had this same duty. Orton had the duty to leave its work in a safe condition for the public or to provide appropriate warning devices if the area could not be left in a safe condition. CDAA had this same duty.

■ The trial court also instructed the jury that in determining any negligence of the city or GTNW that was a proximate cause of Beitzel's injuries, the jury was allowed to consider only whether the city or GTNW failed to discover or remedy any defect in the street or any inadequacy in warning of a defect.

At trial, there was substantial evidence to support the following:

1. On the Thursday before Beitzel's accident, CDAA removed three inches of backfill from the portion of the street that Orton had excavated and refilled. CDAA placed some small traffic control cones beside the excavation. CDAA left the scene without paving the excavation with asphalt. There was no further work on the portion of the street that had been excavated before Beitzel's accident early on Monday morning.

2. Late on Thursday afternoon, Orton's superintendent and GTNW's inspector placed a lighted barricade and some larger traffic control cones at the excavation left unpaved by CDAA.

3. Orton's superintendent was at the site of the excavation for a half day on the Friday before Beitzel's accident. The superintendent testified that the condition of the excavation had not changed since the afternoon before and that the barricade and cones were in the same position. The superintendent did not return to the site of the excavation until Monday morning after Beitzel's accident.

4. GTNW's inspector did not work on the Friday, Saturday, or Sunday preceding Beitzel's accident.

5. The city had assigned an inspector to the project. According to the city's policy, this inspector was not expected to make regular trips to the site of the excavation to check on GTNW, Orton, or CDAA. The inspector's responsibility was to respond if there were a complaint, or if GTNW encountered a change in the plans and were going to proceed in a different work pattern.

6. The lighted barricade was not in place at the excavation when Beitzel's accident occurred early on Monday morning.

This evidence and the inferences from it that are most favorable to Beitzel justified the trial court in submitting to the jury the apportionment of the negligence that proximately caused Beitzel's injuries. It was then the jury's function to determine from all the evidence the degree of negligence of each of the parties.

The trial court correctly denied the motions for j.n.o.v.

## III.

THE TRIAL COURT WAS CORRECT IN DENYING THE MOTIONS BASED ON ALLEGED ERRORS OF LAW IN THE JURY INSTRUCTIONS.

The city and GTNW assert that the trial court should have granted their motion for a new trial pursuant to I.R.C.P. 59(a)(7), because the trial court gave the jury erroneous instructions. We disagree.

The city and GTNW contend that the trial court failed to explain to the jury the nature of the nondelegable duty imposed on the city and GTNW for defects caused by Orton and CDAA. In their view, this caused the jury to accumulate the negli-

gence of CDAA and Orton in apportioning negligence to GTNW and the city.

The instructions at issue provided:

1. In determining whether the city and GTNW were negligent in a way that was a proximate cause of Beitzel's injuries, the jury was allowed to consider only whether or not the city and GTNW failed to discover or remedy any defect in the roadway or any inadequacy in warning of any defect caused by Orton or CDAA.

2. The city remained liable for Beitzel's injuries caused by the failure of GTNW, Orton, or CDAA to exercise reasonable care or to take reasonably necessary precautions to place and maintain traffic control devices necessary to regulate, warn, or guide traffic in construction areas.

3. GTNW remained liable for Beitzel's injuries caused by the failure of Orton or CDAA to exercise reasonable care or to take reasonably necessary precautions to place and maintain traffic control devices necessary to regulate, warn, or guide traffic in construction areas.

 These instructions allowed the jury to apportion to the city and GTNW not only their own negligence, but also the negligence of Orton or CDAA in failing to place and maintain barricades and cones to warn the public of the excavation. This was not an error in law. Where a city has a nondelegable duty, the city may be liable not only for its own negligence in failing to carry out the duty, but also for the failure of others whom the city has authorized to carry out it's duty.

The trial court correctly denied the motions for a new trial pursuant to I.R.C.P. 59(a)(7).

## IV.

IT IS NOT NECESSARY TO ADDRESS THE TRIAL COURT'S FAILURE TO INCLUDE UNNAMED PARTIES ON THE SPECIAL VERDICT.

 The city and GTNW assert that the trial court should have included on the special verdict form a place for the jury to apportion to unnamed parties negligence for having removed a lighted barricade from the site of the excavation prior to Beitzel's accident. Because the jury did not apportion any negligence to Beitzel, it is not necessary for us to address this question.

The Court has ruled that in appropriate cases where comparative negligence is at issue the name of a non-party should be placed on the verdict form. *Hickman v. Fraternal Order of Eagles,* 114 Idaho 545, 547, 758 P.2d 704, 706 (1988); *Vannoy v. Uniroyal Tire Co.,* 111 Idaho 536, 542, 726 P.2d 648, 654 (1985); *Lasselle v. Special Prod. Co.,* 106 Idaho 170, 172, 677 P.2d 483, 485 (1983); *Pocatello Indus. Park Co. v. Steel W. Inc.,* 101 Idaho 783, 786–87, 621 P.2d 399, 402–03 (1980). As stated most recently by the Court in *Hickman,* I.C. §§ 6–801 and 6–802 "envision apportionment where there is 'negligence attributable to the person recovering.'" 114 Idaho at 548, 758 P.2d at 707. In *Hickman,* the Court upheld the trial court's decision not to include an allegedly negligent non-party on the verdict form where the plaintiffs were not negligent. The rationale of the Court for upholding the trial court's decision was that any negligence of the non-party could not serve to lessen the award to the plaintiffs. *Id.*

Under the "individual rule" adopted by the Idaho legislature when it enacted comparative negligence, the negligence of the plaintiff must be compared against each individual defendant in determining whether the plaintiff may recover. I.C. §§ 6–801 to –803; *see also Ross v. Coleman Co.,* 114 Idaho 817, 830, 761 P.2d 1169, 1182 (1988); *Odenwalt v. Zaring,* 102 Idaho 1, 5, 624 P.2d 383, 387 (1980). In this case, the jury found that Beitzel was not negligent, but that there was negligence on the part of each of the four named defendants which was a proximate cause of any damages suffered by Beitzel. Therefore, even if an unnamed party who allegedly removed the lighted barricade from the site of the excavation had been included on the verdict form, all of the named defendants would have been liable to Beitzel. Also, if some

negligence had been apportioned to an unnamed party, the four named defendants would not have been able to obtain contribution against the unnamed party pursuant to I.C. § 6–803, since the identity of the party was unknown. The verdict would not have been binding on the unnamed party, in any event.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTIONS FOR NEW TRIAL OR REMITTITUR BASED ON THE GROUND THAT THE VERDICT WAS EXCESSIVE.

■ The city, GTNW, and Orton assert that the trial court should have granted a new trial or a remittitur on the ground that the damages awarded by the jury were excessive. We conclude that the trial court did not abuse its discretion in denying a new trial or a remittitur on this ground.

In *Quick*, 111 Idaho at 768–73, 727 P.2d at 1196–1201, we reviewed the scope of discretion a trial court has in deciding whether to grant a new trial pursuant to I.R.C.P. 59(a)(5) on the ground that the jury awarded excessive damages. *See also Sanchez v. Galey*, 115 Idaho 1064, 1070, 772 P.2d 702, 708 (1989) (*Sanchez II*); *Sanchez v. Galey*, 112 Idaho 609, 614–16, 733 P.2d 1234, 1239–41 (1986) (*Sanchez I*).

In this case, in denying the motion for a new trial on this ground, the trial court said:

> I have weighed the evidence which supports the amount of the jury's award. There was evidence of Plaintiff's medical expenses, pain and suffering, property damage, and lost wages. In particular, Plaintiff presented evidence of his continuing pain and the curtailment of activities that he had enjoyed in the past. In comparison with what I would have awarded in a trial to the court, the jury's award of $300,000.00 is generous. However, the disparity is not so great that it appears to me that the award was given under the influence of passion or prejudice. It cannot be said that the jury's

award in this case "shocked my conscience." Defendant's Motions for a New Trial based upon I.R.C.P. 59(a)(5) are denied.

This fulfilled the requirements stated in *Quick*. We reject the argument that the trial court's decision was deficient because it did not contain the specific dollar amount the trial court would have awarded. The trial court indicated that the trial court had determined this amount and had compared it to the jury's award.

In deciding whether to grant a new trial pursuant to I.R.C.P. 59(a)(5), it is preferable for a trial court to state the amount it would have awarded. We will not, however, overturn a trial court's decision if the trial court indicates that it determined the amount it would have awarded and compared this amount to the jury's award.

In *Sawyer v. Claar*, 117 Idaho 157, 157–58, 786 P.2d 548, 548–49 (1990), we reviewed a decision of our Court of Appeals and concurred in the part of the Court of Appeals' opinion that approved the trial court's analysis and manner of reaching a decision to deny a motion for new trial pursuant to I.R.C.P. 59(a)(5). The trial court's decision that was approved in *Sawyer* did not state the amount the trial court would have awarded, but only that the trial court had compared the jury's award to what the trial court would have awarded if there had been no jury. *Sawyer v. Claar*, 115 Idaho 322, 324, 766 P.2d 792, 794 (Ct. App.1988).

In this case, the trial court did not abuse its discretion in denying the motions for a new trial or remittitur pursuant to I.R.C.P. 59(a)(5).

## VI.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTIONS FOR NEW TRIAL ON THE GROUND THAT THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY THE VERDICT.

The city, GTNW, and Orton assert that the trial court should have granted a new trial on the ground that there was insuffi-

cient evidence to justify the portion of the verdict apportioning negligence that caused the accident. We conclude that the trial court did not abuse its discretion in denying a new trial on this ground.

In *Quick*, we also reviewed the scope of discretion a trial court has in deciding whether to grant a new trial pursuant to I.R.C.P. 59(a)(6). 111 Idaho at 766–68, 727 P.2d at 1194–96. In denying the motion on this ground in this case, the trial court said:

> Where the facts of this case are concerned, there was no dispute about the fact that an accident occurred or that the accident was caused when Plaintiff's motorcycle ran into a trench that existed in a City street as a result of an underground line that was being constructed for [GTNW] by Orton with asphalt application by [CDAA]. However, conflicting evidence was presented about why the trench existed on the night of the accident and who should have marked the site. This evidence does not preclude a verdict for Plaintiff. Rather, it determines which of the Defendants is liable and to what degree. There was also conflicting evidence about the seriousness of Plaintiff's injuries. Conflicting evidence alone is not enough to merit setting aside the jury verdict. This Court has weighed the conflicting evidence and finds that the verdict is not contrary to the weight of the evidence. Witnesses for both sides were credible. While Defendants may dispute the extent to which each one is liable, the jury reached a determination. In this case, the balance tips in favor of the jury's collective wisdom. This Court cannot find that a mistake was made. Therefore, this Court holds that there was sufficient evidence to justify the verdict and denies Defendants' Motions for a New Trial based on I.R.C.P. 59(a)(6).

This was sufficient to fulfill the requirements stated in *Quick*. The trial court did not abuse its discretion in denying the motion for new trial pursuant to I.R.C.P. 59(a)(6).

## VII.

## THE CITY AND GTNW ARE ENTITLED TO INDEMNIFICATION BY ORTON AND CDAA.

The city and GTNW assert that the trial court should not have set aside the judgment awarding them indemnification from Orton and CDAA. We agree.

In its decision setting aside the judgment that awarded the city and GTNW indemnification from Orton and CDAA, the trial court focused on the fact that the jury had found the city and GTNW were each independently negligent. The trial court ruled that because of this independent negligence the indemnification clause in the contract between GTNW and Orton was void and unenforceable under I.C. § 29–114 and there could be no common law indemnity from CDAA.

The pertinent portion of I.C. § 29–114 states:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, highway, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the *sole negligence of the promisee, his agents or employees, or indemnitees*, is against public policy and is void and unenforceable.

(Emphasis added).

The indemnity clause in the contract between GTNW and Orton stated:

> 16. CONTRACTOR SHALL INDEMNIFY AND SAVE TELEPHONE COMPANY FREE AND HARMLESS FROM AND AGAINST ALL LOSS OR EXPOSURE BY REASON OF LIABILITY IMPOSED BY LAW UPON TELEPHONE COMPANY FOR DAMAGES BECAUSE OF PERSONAL INJURY, INCLUDING THE DEATH AT ANY TIME RESULTING THEREFROM SUSTAINED BY

ANY PERSON OR PERSONS; OR DESTRUCTION OR DAMAGE TO PROPERTY BELONGING TO TELEPHONE COMPANY, AS WELL AS TO PROPERTY BELONGING TO THIRD PERSONS, RESULTING IN ANY MANNER DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH OR IN THE COURSE OF THE WORK, OR BY ANY ACT OF CONTRACTOR, HIS EMPLOYEES OR AGENTS; PROVIDED, HOWEVER, THAT CONTRACTOR SHALL NOT BE RESPONSIBLE FOR ANY SUCH INJURY, DESTRUCTION OR DAMAGE CAUSED SOLELY BY THE NEGLIGENCE OF TELEPHONE COMPANY IN CONNECTION WITH THE WORK.

The indemnification clause does not require Orton to indemnify GTNW, if Beitzel's injuries had been caused solely by GTNW's negligence. To this extent, the clause does not violate I.C. § 29–114. The questions we must resolve, however, are (1) whether the clause requires Orton to indemnify GTNW, where Beitzel's injuries were caused solely through the combined negligence of the city, GTNW, Orton, and CDAA, (2) whether Orton and CDAA were agents or employees of GTNW, and (3) whether the city is an indemnitee of GTNW.

■ The clause clearly requires Orton to indemnify GTNW for any negligence of Orton, its employees or agents. There is no specific provision in the clause requiring Orton to indemnify GTNW for the negligence of the city and CDAA. If the clause requires this, the indemnification must arise from the words: "resulting in any manner directly or indirectly from or in connection with or in the course of the work." Clearly, this phrase contemplates a loss that results from GTNW's negligence, because the concluding portion of the clause excludes indemnification where the loss is caused solely by GTNW's negligence. There would have been no reason to exclude indemnification for a loss caused by GTNW's sole negligence, unless the parties intended to include loss caused in whole or in part by GTNW's negligence within the phrase: "resulting in any manner directly or indirectly from or in connection with or in the course of the work."

If the parties intended to include in "the work" phrase loss caused in whole or in part by GTNW's negligence, there is no reason to suppose they did not also intend to include within the coverage of this phrase loss caused in whole or in part by others, such as the city and CDAA. Therefore, we conclude that the clause requires Orton to indemnify GTNW for any liability caused solely through the combined negligence of GTNW, Orton, CDAA, and the city.

■ This conclusion leads us to consider whether Orton and CDAA were agents or employees of GTNW and whether the city was an indemnitee of GTNW. Orton and CDAA were agents of GTNW in the broad sense of the concept. *Gorton v. Doty*, 57 Idaho 792, 798, 69 P.2d 136, 139 (1937) ("Broadly speaking, 'agency' indicates the relation which exists where one person acts for another."). Whether the city was an indemnitee of GTNW requires a more intensive analysis.

The city tendered its defense of Beitzel's lawsuit to GTNW, and GTNW accepted the tender. There is nothing in the record, however, indicating that GTNW has agreed to indemnify the city from the judgment awarded to Beitzel. In fact, by their cross-claims, the city and GTNW each sought indemnification from Orton and CDAA. Therefore, unless the city was entitled to indemnification by GTNW by way of equitable indemnification, the indemnification clause in the agreement between GTNW and Orton does not violate I.C. § 29–114.

GTNW's claim for indemnification from CDAA is also founded on the concept of equitable indemnity. CDAA argues that because the jury found the city and GTNW contributed to the cause of the accident, CDAA cannot be required to indemnify them. This oversimplifies the principles that must be applied in this case.

In *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 766 P.2d 751 (1988), the Court rejected the argument that the adoption by Idaho of comparative negligence in I.C.

§ 6–801 abrogated equitable indemnity in this state:

> Equitable indemnity is founded on common law notions of justice, and unless explicit statutory language abrogates such common law concepts, they remain viable. We see no language in I.C. § 6–801 requiring the abrogation of the common law remedy of equitable indemnity.

*Id.* at 285, 766 P.2d at 755.

We note that early this century this Court stated in dicta that where a city is liable to an injured party for its negligence in allowing an obstruction in or over a sidewalk or street, "the person or corporation that places such obstructions in or over the sidewalk or street is liable to the city for whatever damages it has to pay for such unlawful acts." *Baillie v. City of Wallace,* 24 Idaho 706, 718, 135 P. 850, 854 (1913). This dicta foreshadowed the analysis we must make in this case.

In *Williams v. Johnston,* 92 Idaho 292, 442 P.2d 178 (1968), the Court reviewed in detail the application of equitable indemnity between alleged joint tort-feasors. The Court concluded by stating: "It is the conclusion of the court that unless liability of the claimed indemnitee to the third party is established, the right to indemnification does not arise." *Id.* at 298, 442 P.2d at 184.

Although *Williams* was a case in which the party seeking indemnity had settled with the injured party, this statement illuminates the fact that there would not be a basis for GTNW to assert the right to indemnity against CDAA if the jury had determined that the GTNW and the city were not liable to Beitzel. Conversely, the statement implies that there are cases in which the right to equitable indemnity arises even though the party entitled to indemnity has been found to be liable to the third party.

In *Industrial Indem. Co. v. Columbia Basin Steel & Iron Inc.,* 93 Idaho 719, 471 P.2d 574 (1970), the Court succinctly summed up the concept of equitable indemnity: "It is well established that under the common law, a person who without fault on his part is compelled to pay damages occasioned by the negligence of another is entitled to indemnity." *Id.* at 723, 471 P.2d at 578 (citations omitted).

In *May Trucking Co. v. International Harvester Co.,* 97 Idaho 319, 543 P.2d 1159 (1975), the Court noted that a party seeking indemnity may base the claim on a number of theories, including:

> (1) The indemnitee may claim that [the indemnitee's] liability was based on passive neglect, while the indemnitor was guilty of recklessness.
>
> (2) The indemnitee owed only a secondary duty to the injured party while the indemnitor was primarily responsible, as in cases where a municipal corporation has the primary duty to keep the streets in safe condition and the landowner has a secondary duty.
>
> (3) The indemnitee may be only vicariously liable for the actual negligence of [the indemnitee's] employee and seek indemnity. These are the agency cases.

*Id.* at 321, 543 P.2d at 1161.

In *Borchard v. Wefco, Inc.,* 112 Idaho 555, 733 P.2d 776 (1987), the Court refined the formulation of equitable or implied indemnity:

> Therefore, "where the fault of each [party] is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on [that party's] own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case." *Home Ins. Co. v. Atlas Tank Mfg. Co.,* 230 So.2d 549, 551 (Miss.1970).

*Id.* at 558, 733 P.2d at 779.

The full text of the portion of the Mississippi Supreme Court's decision in *Home Insurance* from which the Court quoted in *Borchard* is as follows:

> The general rule governing implied indemnity for tort liability is that a joint tort feasor, whose liability is secondary as opposed to primary, or is based upon imputed or passive negligence, as opposed to active negligence, or is negative negligence as opposed to positive negli-

gence, may be entitled, upon an equitable consideration, to shift [the joint tort feasor's] responsibility to another joint tort feasor. However, where the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on [the party's] own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.

230 So.2d at 551.

In this case, both Orton and CDAA admitted that they were responsible for leaving the work area where Beitzel's accident occurred in a safe condition for the motoring public and for properly marking or signing the area with appropriate warning devices if the area could not be left in a safe condition for the motoring public.

The trial court instructed the jury that in attributing negligence to the city or GTNW the jury was allowed to consider only whether the city or GTNW failed to discover or remedy any defect in the street or any inadequacy in warning of any defect caused by Orton or CDAA. At the request of the city and GTNW and over the objection of Beitzel, Orton, and CDAA, the trial court also instructed the jury that if the city or GTNW negligently failed to discover or remedy defects created by the negligence of Orton and CDAA, then the city and GTNW were "entitled to recover from the one doing the work who is primarily responsible for the performance of said duties." This, in essence, instructed the jury that the city and GTNW were entitled to be indemnified by Orton and CDAA for any liability the city and GTNW might have to Beitzel.

■ Under the circumstances of this case, this instruction was correct. The negligence of the city and GTNW in failing to discover or remedy any defect in the street or any inadequacy in warning of any defect caused by Orton or CDAA was not similar in character to the negligence of CDAA, which also had the duty to leave its work in a safe condition for the public.

Therefore, the city and GTNW were entitled to be indemnified by CDAA.

■ On the other hand, the negligence of the city was similar in character to the negligence of GTNW. The trial court instructed the jury that in determining any negligence of the city or GTNW, the jury was allowed to consider only whether the city or GTNW failed to discover or remedy any defect in the street or any inadequacy in warning of a defect. Therefore, the city was not entitled to indemnification by GTNW and was not an indemnitee of GTNW, as referred to in I.C. § 29–114. For this reason, the indemnification clause of the agreement between GTNW and Orton did not violate I.C. § 29–114.

## VIII.

### CONCLUSION.

We affirm the judgment in favor of Beitzel against the city, GTNW, Orton, and CDAA. We reverse the trial court's order setting aside the judgment granting the city and GTNW indemnification from Orton and CDAA. We remand the case to the trial court for reinstatement of the judgment for indemnification.

We award costs on appeal to Beitzel against the city, GTNW, Orton, and CDAA as to the appeal from the judgment in favor of Beitzel. We award costs on appeal to the city and GTNW against Orton and CDAA as to the appeal from the order setting aside the judgment for indemnification. No attorney fees were requested.

BAKES, C.J., and BISTLINE and McDEVITT, JJ., concur.

BOYLE, Justice, concurring in the result as to Part IV and dissenting as to Part VII.

I concur with Parts I, II, III, V, and VI of the majority opinion. However, I write separately to record the basis for my limited concurrence in Part IV. I also write separately to record my dissent as to Part VII of the majority opinion.

Part IV of the opinion comes to the correct conclusion but, in my view, it does so for the wrong reason. The opinion states

that "even if an unnamed party who alleg-edly removed the lighted barricade from the site of the excavation had been included on the verdict form, all of the named defen-dants would have been liable to Beitzel." 121 Idaho at 713, 827 P.2d at 1164. This rationale is problematic because there is no way of knowing the validity of the state-ment until after the issue has gone to the jury. Moreover, it is equally possible that if an unknown defendant had been placed on the verdict form, the jury might have rendered a verdict finding that the un-known defendant was partially or entirely responsible for the accident. Because a trial court must determine whether to in-clude an unnamed party before the jury renders its verdict, this analysis does not provide the correct perspective.

In my view, the correct rationale for not including an unknown defendant on the special verdict form is simply that the "facts" surrounding the alleged unknown defendant in the instant action are wholly speculative. In the cases cited by the ma-jority opinion where a non-party was or should have been placed on the verdict form witnesses were available to testify as to the conduct of the non-party. While the non-party was not amenable to suit in those other cases, there was still testimony or evidence about that person's actions and identity. *See, e.g., Hickman v. Fraternal Order of Eagles,* 114 Idaho 545, 758 P.2d 704 (1988). Here there is neither. The person allegedly involved is unknown and there is no testimony about the removal of the barricades. The defendants should carry the burden of producing such evi-dence because they had a duty to maintain the barricade and provide inspection over the weekend. Further, it is possible that any number of individuals, including their own employees, could have removed the barricades. It is simply too easy for the defendants to blame an unknown person and thereby attempt to transfer the blame for failure to properly barricade the con-struction site. Therefore, because the de-fendants produced no testimony other than speculation that someone other than them-selves removed the barricades, an unknown person under these circumstances should not be included as a defendant on the spe-cial verdict form.

Part VII concludes that the indemnifica-tion agreement between GTNW and Orton was valid and that CDAA must indemnify the city of Coeur d'Alene and GTNW on common law indemnity principles. I cannot agree with these conclusions and respect-fully dissent.

The first portion of Part VII of the ma-jority opinion concludes that the contractu-al indemnity provision requires Orton to indemnify GTNW for the combined negli-gence of all parties that contributed to the plaintiff's harm. The majority makes this conclusion while acknowledging that "[t]here is no specific provision in the [in-demnification] clause requiring Orton to in-demnify GTNW for the negligence of the city and CDAA." 121 Idaho at 715–716, 827 P.2d at 1166–1167. Nevertheless, the majority concludes that the phrase "the work" was intended by the parties to dem-onstrate that Orton had assumed responsi-bility for the "loss caused in whole or in part by others, such as the city and CDAA." 121 Idaho at 716, 827 P.2d at 1167. The majority offers no support for this conclusion except to state that it can think of no reason to suppose that this is not what the parties contemplated when they entered into their contract. *Id.* After reviewing this contractual provision I must respectfully disagree.

The presumption must always be when interpreting contracts that a party does not intend to assume the risks of third parties, especially parties not under its control, un-less it is done by explicit language. Here the agreement is solely between GTNW and Orton and there is not the slightest hint that Orton intended to assume respon-sibility for any other party's negligence including that of the city or CDAA. The last clause of paragraph sixteen of the contract, limiting Orton's responsibility when damage is caused by GTNW's negli-gence, demonstrates that Orton did not in-tend to assume all responsibility for harm associated with "the work" of the contract.

A better interpretation of paragraph six-teen of the contract is that Orton would

assume responsibility for that portion of fault that GTNW was required to pay but for which Orton was at fault. Such an interpretation comports with the words of the indemnification clause and avoids the restrictions of I.C. § 29–114 discussed hereafter. The majority's conclusion which simply assumes that the phrase "the work" was intended by Orton to be an assumption of all other parties' negligence is not supported by the record.

Aside from the question of which contractual interpretation is more faithful to the parties' original intent is the more fundamental question of *who* should make this determination. While in my view the interpretation I suggest above is clear, at a minimum it serves to illustrate that the majority's interpretation is subject to considerable doubt. The interpretation of an ambiguous contract has always been a fact question for the trier of fact and is not determined on appeal. *See Ramco v. H–K Contractors, Inc.*, 118 Idaho 108, 794 P.2d 1381 (1990); *Luzar v. Western Surety Co.*, 107 Idaho 693, 692 P.2d 337 (1984); *International Engineering Co. v. Daum Industries*, 102 Idaho 363, 630 P.2d 155 (1981). Moreover, we have long declined to address arguments not presented at trial. *See, e.g., Kinsela v. State Dep't of Finance*, 117 Idaho 632, 790 P.2d 1388 (1990). However, in this case there was no evidence presented to the jury on the interpretation of the indemnification clause of the contract between Orton and GTNW. Not a single witness testified as to the meaning of the indemnification clause. Therefore, it is troubling to me that in this case the Court not only addresses an issue not considered by the jury but also seeks to resolve factual questions as well. While the majority argues that *equitable* indemnification was presented to the jury via a portion of one of the jury instructions, the *contractual* indemnification issue was a fact question that was not presented nor decided by the jury. In my view, this Court should avoid resolving the factual question about whether Orton intended to assume responsibility for all potential third parties by the contractual reference to "the work" found dispositive by the majority.

After deciding the factual interpretation of the contract the majority then reaches out to interpret I.C. § 29–114. While, in my view, this question is not properly before this Court, because it is addressed by the majority I feel it necessary to present my views and address this issue. If we were to assume that the majority properly interpreted the indemnification clause of the contract and that Orton deliberately chose to assume responsibility for all other parties' negligence, I.C. § 29–114 would make such an agreement void and unenforceable. The majority limits the "sole negligence" clause of I.C. § 29–114 so that it voids only those contracts in which one-hundred percent of the harm is caused by the promisee and his agents, employees or indemnitees. Because the city is not an indemnitee of GTNW the majority concludes that the statute is inapplicable. This reading of the statute voids its purpose and ignores its clear language.

Idaho Code § 29–114 voids indemnification agreements, for the narrow class of contracts specified therein, to the extent that they apportion liability out of proportion to fault. Properly understood, I.C. § 29–114 clearly states that an agreement related to highway alteration or repair that purports to indemnify the promisee for damage caused by either the promisee *or* the promisee's agents *or* the promisee's employees *or* the promisee's indemnitees "is against public policy and is void and unenforceable." I.C. § 29–114.

The clear purpose of this provision is that while a promisee may enforce an indemnity agreement if the promisee is saddled with financial responsibility that exceeds its fault, the promisor cannot be held responsible for the fault of the others. The obvious rationale for this statutory provision is that to allow such indemnification agreements would shift responsibility for the harm away from a party who contributed to the harm. While this rationale could be debated, we unanimously accepted it in *Borchard v. Wefco, Inc.*, 112 Idaho 555, 733 P.2d 776 (1987). In the context of a retailer and manufacturer we concluded:

Therefore, a retailer must be free of liability in order to receive indemnity *either under a general indemnity agreement or under implied indemnity. INA Ins. Co. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 722 P.2d 975, 982 (App. 1986). This principle receives ample support in case law. *May Trucking Co. v. International Harvester Co.,* 97 Idaho 319, 543 P.2d 1159 (1975); *Industrial Indem. Co. v. Columbia Basin Steel & Iron, Inc.,* 93 Idaho 719, 471 P.2d 574 (1970); *Prickett v. Hawkeye Security Ins. Co.,* 282 F.2d 294 (10th Cir.1960); *Allied Mut. Casualty Corp. v. General Motor Corp.,* 279 F.2d 455 (10th Cir. 1960).

*Borchard,* 112 Idaho at 558, 733 P.2d at 779. Therefore, we should not ignore the legislature's clear policy choice in the field of construction activities.

Applying I.C. § 29–114 to this case, if GTNW were to pay the entire damage award, it could seek indemnification under the contract for that portion of fault allocated to Orton by the jury. However, GTNW could not force Orton to pay for GTNW's own fault and surely could not seek indemnification from Orton for the fault of other third parties such as the city and CDAA. Even if Orton had agreed to assume responsibility for all parties associated with "the work," (a proposition which I find untenable) it is clear that the statute would void any attempt to force Orton to pay for the fault of the city, GTNW and CDAA. Accordingly, I respectfully dissent from the majority's holding that the indemnity agreement makes Orton liable for the combined negligence of all of the defendants in this case.

Having concluded that the purported indemnity agreement between Orton and GTNW is unenforceable, the next issue to which I take exception is whether the district court erred in concluding that the city and GTNW were not entitled to equitable indemnity. A majority of the Court concludes that the district court erred. I respectfully disagree.

As its name suggests, the doctrine of equitable indemnity is intended to promote equity and fairness because it "refers to those situations where a person who *without fault* on his part is compelled to pay damages occasioned by the negligence of another." *May Trucking Co. v. International Harvester Co.,* 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975) (emphasis added) (citations omitted). The majority acknowledges the rule of law that a party is only entitled to equitable indemnity if they are without fault. *See* 121 Idaho at 717, 827 P.2d at 1168 (quoting *Industrial Indemnity Co. v. Columbia Basin Steel & Iron Inc.,* 93 Idaho 719, 723, 471 P.2d 574, 578 (1970)). However, the majority takes admitted dicta out of context in two older cases to support its point. *See* 121 Idaho at 717, 827 P.2d at 1168 (quoting *Baillie v. City of Wallace,* 24 Idaho 706, 718, 135 P. 850, 854 (1913) and *Williams v. Johnston,* 92 Idaho 292, 442 P.2d 178 (1968)). Both of the quotations used by the majority are correct when understood in context, but here they have been presented out of context to give a meaning that, in my view, was not intended.

In *Williams* the Court addressed the issue of whether an out-of-court settlement constituted the *derivative liability* that is necessary for an equitable indemnity claim. In holding that the settlement at issue did constitute an example of derivative liability, we followed the long established rule that a party seeking equitable indemnity must be without fault because the jury in *Williams* found the two parties claiming subrogation to be "free from any negligence as to the plaintiff." *Williams,* 92 Idaho at 296. The *Baillie* quote should also be understood in the following way. If a city has derivative liability for the injuries of another, they may be entitled to equitable indemnification but only if the city is without fault. *See Baillie,* 24 Idaho at 718, 442 P.2d 178.

The majority points out that various types of derivative liability, including passive neglect, secondary duty, or vicarious liability may establish the legal liability of a party who is without fault. 121 Idaho at 717, 827 P.2d at 1168 (quoting *May Trucking Co. v. International Harvester Co.,* 97

Idaho 319, 321, 543 P.2d 1159, 1161 (1975)). However, only when a party shares derivative liability and yet is without fault is that party entitled to equitable indemnity. By failing to acknowledge this distinction, the majority's holding has the effect of eliminating the long established "without fault" requirement to allow indemnification even when both parties are at fault.

The majority seeks to avoid this characterization of its holding by implying that the fault of the city and GTNW, on the one hand, and Orton and CDAA, on the other, is not "equal in grade and similar in character." 121 Idaho at 717–718, 827 P.2d at 1168–1169 (quoting *Borchard v. Wefco, Inc.*, 112 Idaho 555, 733 P.2d 776 (1987)). However, the determination of whether a party is without fault or whether it shares fault that "is equal in grade or similar in character" to the other parties' fault is a fact question. 121 Idaho at 717, 827 P.2d at 1168 (quoting *Borchard v. Wefco, Inc.*, 112 Idaho 555, 733 P.2d 776 (1987)). Fault is crucial to the determination of equitable indemnity because "no one should be permitted to base a cause of action on [that party's] own wrong. Thus, the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case." *Id.*

Nevertheless, the majority again determines the facts of this case by concluding that "[t]he negligence of the city and GTNW in failing to discover or remedy any defect in the street or any inadequacy in warning of any defect caused by Orton or CDAA was not similar in character to the negligence of CDAA." 121 Idaho at 718, 827 P.2d at 1169. Clearly such a factual finding is not the province of this Court. Moreover, it directly contradicts the finding of the district court who has exclusive province over factual determinations.

The district court addressed the indemnification cross-claim of GTNW and the city by noting that "[s]pecific instructions on the cross-claim and/or indemnification were not given at the trial. An instruction submitted by Defendants [GTNW] and City regarding the cross-claim was withdrawn. The special verdict form submitted by De-

fendants [GTNW] and City did not address the cross-claim." The district court concluded:

After reviewing the instructions and the verdict, this Court concludes that there was no specific finding by the jury on indemnification nor can any assumption be made about the jury's intentions with respect to indemnification. Rather, the special verdict form apportions fault based upon the independent negligence of each of the Defendants. The issue of indemnity as set forth in the Cross-claim was not presented to the jury by instruction or on the verdict form.

R. at 349.

Not only is it impermissible for this Court to make finding of fact, we have repeatedly held that issues not raised at trial will not be considered on appeal. *See, e.g., Kinsela v. State Dep't of Finance,* 117 Idaho 632, 790 P.2d 1388 (1990). Here the issue of indemnification was not raised by GTNW and the city until they filed their post-trial motions. Because indemnification was not raised at trial the only remedy available to the city and GTNW is by way of their new trial motion. The majority correctly concludes in Part V of the opinion that there was no error in denying the motion for a new trial. Therefore, this Court should not reach an issue not raised at trial and therefore not properly before us.

Even if we could reach this factual issue, the Court's conclusion that the negligence of the city and GTNW was not "equal in grade or similar in character" to that of Orton and CDAA, in my view, is incorrect. As the district court noted, the jury was asked to find the independent negligence of each of the parties. The jury did so and assessed a higher percentage of negligence to the city and to GTNW individually than to either Orton or CDAA. Moreover, as the grade and character of the parties' negligence was before the jury, our role on appeal is simply to determine whether there is substantial evidence to support the conflicting evidence presented at trial. The majority opinion correctly notes that "[t]he city and GTNW each had an inspector to

inspect the work on the project," 121 Idaho at 711, 827 P.2d at 1162, both the city and GTNW had a nondelegable duty to "place and maintain traffic control devices necessary to regulate, warn or guide traffic in the construction area," 121 Idaho at 712, 827 P.2d at 1163, "GTNW's inspector did not work on the Friday, Saturday, or Sunday preceding Beitzel's accident," *id.*, and the city's "inspector was not expected to make regular trips to the site of the excavation" and did not do so, 121 Idaho at 712, 827 P.2d at 1163. Therefore, in my view, there was substantial evidence to conclude that the city and GTNW were not without fault and should be responsible for their respective contribution to the plaintiff's harm.

Accordingly, I would affirm the district court.