505 P.2d 1260

Mary Jacquelynne NOTTINGHAM, surviving widow, in her own behalf and Guardian ad Litem for and on behalf of Thomas Michael Nottingham, et al., Plaintiff-Respondent,

v.

Dr. James E. McCORMICK and Jane Doe McCormick, husband and wife, Defendants-Appellants,

Kenneth Summers et al., Defendants.

No. 10717.

Supreme Court of Idaho.

Feb. 2, 1973.

Rehearing Denied Feb. 22, 1973.

Michael E. McNichols, Orofino, for appellants.

Nixon & Nixon, Bonners Ferry, Brian Kennedy, John G. Layman, Spokane, Wash., for respondent.

McFADDEN, Justice.

Plaintiff-respondent Mary Jacquelynne Nottingham instituted this action on her own behalf and on behalf of her minor children to recover damages for the death of her husband, George Eugene Nottingham. In her amended complaint she named as defendants Dr. James E. McCormick and his wife, the appellants herein. She also named as defendants Mr. and Mrs. Kenneth Summers and Carolyn McCormick Hollenberg, who is the daughter of Dr. and Mrs. McCormick.

In her second amended complaint, respondent, Mrs. Nottingham alleged that on the night of August 22, 1967, her husband was driving a 1962 Corvair panel motor vehicle along U. S. Highway No. 12; that a horse owned by Carolyn McCormick Hollenberg and under the control of Dr. and Mrs. McCormick came across the highway in front of the path of the vehicle driven by Mr. Nottingham; as a result of the vehicle striking the horse, Mr. Nottingham sustained fatal injuries and died on August 24, 1967. Respondent also alleged that the accident occurred within the boundaries of a herd district, and that the McCormicks

were negligent in allowing the horse to be at large at the time and place of the accident. She also alleged negligence on the part of Carolyn McCormick Hollenberg in allowing her mare to roam at large in the herd district, and further alleged that the Summers had enclosed a horse belonging to Carolyn McCormick Hollenberg, but that the Summers negligently released the horse to roam. Respondent also alleged that the defendants breached a duty to the respondent in these regards, and that the respondent suffered special and general damages as a result of the negligence.

In appellants' answer to respondent's second amended complaint, appellants admitted ownership of a mare by their daughter, but they generally denied all other allegations of the second amended complaint, and interposed some affirmative defenses not involved in this appeal. By their answer, the appellants presented the factual issue of whether the mare owned by their daughter was the horse involved in the accident.

The case was tried before a jury. During the course of the trial, the evidence failed to establish any claim against the Summers and on their motion they were dismissed from the case. The trial continued against the McCormicks and their daughter, Carolyn McCormick Hollenberg. The jury returned its verdict in favor of respondent and against Dr. and Mrs. McCormick in the sum of $61,819.53. The jury, however, in its verdict, exonerated Carolyn McCormick Hollenberg, the owner of the horse, from any liability. Judgment was entered against Dr. and Mrs. McCormick, and they appealed from that judgment and from the order of the trial court denying their timely motion for new trial. The issues on this appeal involve only the claim of respondent, Mrs. Nottingham, against the appellants, Dr. and Mrs. McCormick.

Respondent's theory of the case was that the accident occurred within the boundary of a herd district, and that the owner of the horse or the person in control of the horse was liable for the damages caused by the accident, unless it could be established that the animal was lawfully on the highway at the time of the accident. See, Soran v. Schoessler, 87 Idaho 425, 394 P.2d 160 (1964); Corthell v. Pearson, 88 Idaho 295, 399 P.2d 266 (1965); Whitt v. Jarnagin, 91 Idaho 181, 418 P.2d 278 (1966).

On August 22, 1967, Mr. Nottingham was returning from a business trip, driving a Corvair panel vehicle. Mr. Nottingham was driving westerly along U. S. Highway 12, towards Lewiston. At about 10:15 p. m., at a point about 2.3 miles east of Lenore, Idaho, the panel vehicle struck and killed a horse. The accident occurred within the boundaries of a herd district created pursuant to I.C. § 25–2401. Mr. Nottingham sustained head injuries in the accident, and remained unconscious until his death on August 24, 1967.

No eye witnesses to this accident were presented at the trial. However, just shortly after the accident other travellers along the highway came upon the scene and La-Vaughn Frost, a state patrolman, following receipt of information of the accident, drove there within a matter of only a few minutes. However, none of the witnesses called by respondent established by direct evidence the ownership of the horse which was killed in the accident. Although the decisive factual issue in this case at trial was whether the McCormicks were the owners of or the persons in control of the horse which was involved in the fatal accident, none of the witnesses called by respondent established the ownership of the horse. It thus became necessary for plaintiff-respondent to establish the ownership of the horse, and parties who had control of the horse, by circumstantial evidence.

At trial the plaintiff-respondent first called the deputy auditor of Nez Perce County to establish the boundaries of the herd district. This witness identified the minutes of the board of county commissioners establishing the district. Respondent's next witness, Dr. Heusinkveld, was the physician who attended Mr. Nottingham, and he testified as to the nature of Mr. Nottingham's fatal injuries.

At this stage of the trial, then, there had been established the existence of a herd district, and the fact that Mr. Nottingham had died, and the nature of the injuries which occasioned his death. However, there was no evidence of an accident, its cause or location. The respondent then called Dr. McCormick as an adverse party for cross examination under the statute, I.C. § 9–1206. During his examination by respondent, it was established that: Dr. McCormick was a chiropractor; he and his wife lived on his 100 acre ranch about three miles east of Lenore, south of the Clearwater river and adjacent to U. S. Highway No. 12. Adjacent to his property on his western boundary was a two hundred acre ranch owned by the Etters. It was further established that there was no fence between his ranch and the Etters' ranch and that Dr. McCormick kept horses on this property, and that there were seven or eight horses on the two ranches, four of which were owned by the McCormicks. He also cared for horses belonging to his daughters. One of these horses was owned by his daughter, Carolyn, a defendant herein. Dr. McCormick was then asked:

"Did it [Carolyn's mare] have a nickname of 'Taffy'?" Appellants' counsel then objected to the question, stating:

"If the Court please, now I would like to object to this question and to further questions directed to any specific horse until the proper foundation has been laid for the introduction of such evidence or the asking of such questions by a showing of some evidence of the nature, breed and color of the horse that was involved in the accident. Until such time as there is a foundation laid concerning the horse that was hit and killed on the highway, there is no foundation for questioning of Dr. McCormick concerning any specific horses. The testimony regarding his horses would be irrelevant."

Following this, the trial court indicated it believed the objection was well taken, but it then excused the jury and counsel entered into a colloquy concerning the objection.

The trial court then sustained the objection, and respondent withdrew Dr. McCormick from the stand.

After Dr. McCormick was dismissed from the stand, respondent called Mrs. Edith Marie McCormick, Dr. McCormick's wife, for examination under the statute, I.C. § 9–1206. She testified that on August 23, 1967, while she was at home, someone came and inquired if they (the McCormicks) had a horse killed. In response to the inquiry she drove her car down the highway around 10:30 in the morning and found a horse on the highway about a mile and a half from their place. Mrs. McCormick was then asked:

"Q. And you recognized the horse as being a buckskin mare belonging to you?

Appellants' counsel, Mr. McNichols, then objected:

"If the Court please, now I am going to object to this question. May I ask one question in aid of an objection, Your Honor?

The Court: Well, no this is cross examination under the statute so I can't permit you—

Mr. McNichols: May I specify my objection then?

The Court: Yes, *your objection is overruled.*

Mr. Layman: [respondent's counsel] I am sorry. I got lost there, Your Honor.

The Court: Well, he made an objection, but of course, you can lead the witness on cross examination under the statute." (Emphasis supplied.)

Examination of the witness by respondent's counsel continued:

"Q. Did you recognize that horse there as your horse?

A. It was what I presumed to be our horse, yes.

Q. All right. Now you presumed it to be a horse that had been missing from your place?

A. The same as anybody else would do, that if you were—took a quick look I pre-

sumed it was our horse, yes, the one we had been looking for.

Q. Now the horse that you saw laying on the ground, describe it for us.

Mr. McNichols: If the Court please, may I have a continuing objection to this line of questioning?

The Court: Yes.

\* \* \* \* \* \*

The Court: Yes, you will have a continuing objection.

So far overruled.

\* \* \* \* \* \*

A. Am I to describe the horse?

Q. Please.

A. Well, it was a mare. It was a light colored buckskin with black mane and tail, black markings on its legs and a white streak down its forehead.

Q. And were those the same markings of the mare that had been missing from your place?

A. That is right, sir.

\* \* \* \* \* \* \"

After Mrs. McCormick testified, the respondent recalled Dr. McCormick as a witness under the statute. The respondent's counsel asked Dr. McCormick:

"And a couple weeks before this accident your mare had got out of this place [McCormick's ranch]?"

Following this question the following dialogue took place between the court and the appellants' counsel.

"Mr. McNichols: If the Court please, I would like to renew my objection now on the same grounds as previously. As the Court has pointed out—well, I had better not—

The Court: Well don't go into an argument before the jury.

Mr. McNichols: There will be prejudicial irrelevant evidence admitted if this question is allowed to be answered.

The Court: No. Now I'll overrule the objection.

Mr. McNichols: May I have a continuing objection, Your Honor?

The Court: Yes .\* \* \*."

Then Dr. McCormick answered that a buckskin mare had escaped from their ranch and that it had not been recaptured.

The appellants contend that the trial court erred in overruling their objection to Mrs. McCormick's testimony, and that the trial court erred in allowing Dr. McCormick to testify over their objection about a mare which had escaped from the appellants' ranch. These contentions were also submitted to the trial court by appellants' motion for new trial or for judgment notwithstanding the verdict.

The objection to Mrs. McCormick's testimony came at a critical juncture in the trial. At this point in the record there was no evidence introduced concerning a collision between the vehicle and a horse. The record discloses only that a man had died from head injuries and that the highway near the appellants' ranch bisected a herd district.

Mrs. McCormick's testimony at this juncture is irrelevant for two reasons. First, it is not probative of the proposition that she examined a buckskin mare *at the scene of the accident*. If such a fact had been established, then Mrs. McCormick's testimony would have been an important link in respondent's chain of evidence. Nothing in the record, however, demonstrates that Mrs. McCormick saw the buckskin mare *at the scene of the accident*. In fact, the record is devoid of any facts showing the exact location of the dead mare described by Mrs. McCormick along U. S. Highway 12. There are no facts as to the mare's position in relation to the highway or the river, or on which side of the highway it lay. The record fails to disclose whether Mrs. McCormick observed any signs of an accident (i. e., skid marks, debris, etc.) at the place where she examined the mare. There is no evidence that the mare examined by her was killed in a collision with a vehicle. Later during the trial Mrs. McCormick testified, "[t]here was one mark

of injury on the horse which was a bullet hole at the base of the left ear. That is the only markings I saw of injury." Yet none of the other witnesses who were present at the scene of the accident on the night it happened observed the horse being shot. The absence of these facts emphasizes that Mrs. McCormick's testimony was erroneously admitted.

Second, although the record discloses no fact probative of Mrs. McCormick being at the scene of the accident, her testimony might have been relevant if testimony antecedent to hers established the breed, color, or ownership of the horse in the accident. If there had been competent and substantial evidence that a buckskin mare had been killed in the accident, then it would have been a permissible inference that the mare which Mrs. McCormick observed was, indeed, the same animal involved in the accident. However, Mrs. McCormick's testimony was antecedent to any of the essential facts which would have made her testimony logically probative of the connection with the mare involved in the accident. Thus, Mrs. McCormick's testimony is not probative of the ultimate fact in the case, i. e., whether the buckskin mare identified by Mrs. McCormick was involved in the accident. The respondent had the duty of connecting this up, which was not done.

In summary, before Mrs. McCormick's testimony would be relevant in this case one of two conditions had to be satisfied: first, there had to be some evidence of the ownership of the horse involved in the accident or of its breed or color; or, second, there had to be evidence that the animal Mrs. McCormick examined on the road was at the scene of the accident. Neither of these conditions have been met.

An analysis of Dr. McCormick's testimony and the objections thereto reveals the same criticisms presented by Mrs. McCormick's testimony without first showing that an accident had occurred or that a mare had been killed. Although Dr. McCormick's testimony may have eventually become relevant upon the introduction of evidence establishing the color, breed, or ownership of the horse in the accident, such was not the case here.

This Court has previously held circumstantial evidence is competent evidence and may stand on its own as proof. Hobbs v. Ada County, 93 Idaho 443, 462 P.2d 742 (1969); Petricevich v. Salmon River Canal Co., 92 Idaho 865, 452 P.2d 362 (1969). However, the circumstantial evidence in this case, as it has already been illustrated, is not of the nature or character to stand as proof to connect the circumstantial evidence with the proposition to be established; that is, that the horse in the accident belonged to or was controlled by the appellants.

It is our conclusion that the trial court erred in admitting the testimony of these two witnesses over the appellants' objection. Generally, the conduct of the trial is within the discretion of the trial court and upon a proper request or upon a proper showing witnesses may be taken out of order. When this is done, following an objection, such testimony should be admitted conditionally upon it being connected up later by other competent evidence, and if such connective evidence is not later supplied, the testimony should then be stricken. However, here the trial court failed to follow this procedure and admitted the testimony without later requiring that it be connected to establish its relevancy, and the respondent failed in her burden to connect it up. Appellants' subsequent motions for nonsuit, for judgment notwithstanding the verdict and for new trial all were based on this deficiency in the record. The trial court should have corrected the error, extending to the respondent an opportunity to supply additional evidence, or in lieu of a motion by respondent to supply the necessary evidence, that court should have granted appellants' motions. Under these circumstances a new trial should have been granted. I.C. § 10–602; I.R.C.P. 59(a).

The judgment of the trial court and the order denying the appellants' motion for

new trial are reversed and the cause remanded for further proceedings. Costs to appellants.

DONALDSON, C. J., and SHEPARD, McQUADE and BAKES, JJ., concur.