879 P.2d 1126

**MAC TOOLS, INC., a corporation, Plaintiff–Appellant,**

v.

**William A. GRIFFIN and Cathy Jo Patterson, Defendants– Respondents.**

**No. 20105.**

Supreme Court of Idaho.

Aug. 24, 1994.

Skinner, Fawcett & Mauk, Boise; Zuckerman, Spaeder, Taylor & Evans, Miami, FL, for appellant. William L. Mauk argued.

Elam, Burke & Boyd, Boise; Gaines & Sterns, L.P.A., Cleveland, OH, for respondents. J. Ray Durtschi, Boise and Thomas C. Wagner, Cleveland, OH, argued.

SILAK, Justice.

This is an appeal from a jury verdict in favor of the respondents in the amount of $40,000 in compensatory damages and $500,000 in punitive damages for violations of the Idaho Consumer Protection Act by appellant. Appellant claims that the district court erred by not providing the jury with an adequate instruction on the issue of punitive damages and that the court committed reversible error by allowing the testimony of four former employees. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Appellant Mac Tools, Inc. ("Mac") is a small tool manufacturing company which is a wholly owned subsidiary of The Stanley Works. At the time of trial, Mac employed approximately 1800 distributors nationwide to sell tools directly to professional mechanics. To oversee its operations, Mac employed ten regional sales managers who all reported to one national sales manager. The regional sales managers supervised 16–18 district sales managers who in turn were responsible for 12 independent distributors.

In February 1986, Respondent William A. Griffin ("Griffin") became a Mac distributor by executing a Distributor Agreement, an Inventory Purchase Order and Security Agreement, and another Security Agreement whereby Mac agreed to advance monies to Griffin to acquire additional inventory. In March 1986, Griffin attended a seminar on a Mac financing program known as "Mac Cap". This program was designed to provide a distributor with a method by which to sell more expensive items to customers. Distributors would decide to extend credit to customers based upon a credit report; Mac would extend the credit; and the distributor would be required to collect the payments. If the customer failed to make the payments as required, Mac could "recourse" the distributor for the amounts unpaid.

Griffin terminated his distributorship in December 1987. According to Mac, at this time Griffin owed Mac $19,203.50, of which $12,084.97 was related to Mac Cap transactions.

On December 12, 1988, Mac filed a complaint against Griffin and his wife, Cathy Jo Patterson, for the above monies allegedly due and owing. Griffin and Patterson counterclaimed alleging breach of contract, fraud, unjust enrichment and conversion, and later amended the counterclaim by adding a claim for punitive damages. The amended counterclaim also included additional claims of misrepresentation, breach of the implied covenant of good faith and fair dealing, and violations of the Idaho Consumer Protection Act, I.C. § 48–601, et seq. ("ICPA"). The essence of Griffin's claim against Mac is that Mac agreed and represented that it would provide Griffin with programs, procedures, services and products, and the necessary training, help and support to become a successful distributor, and that Mac failed to do so.

Following a trial in November 1991, a jury returned a special verdict finding that Mac had breached its contract with Griffin and

had violated the ICPA. The jury awarded Griffin $40,000 in compensatory damages and $500,000 in punitive damages. The district court entered judgment against Mac in that amount. Subsequently, the court denied Mac's motions for J.N.O.V. and for a new trial, and entered a supplemental judgment against Mac in the amount of $594,006.60, including costs, fees and interest.

## ISSUES ON APPEAL

1. Whether the trial court erred in not providing punitive damage instructions to the jury that required it to find Mac's actions constituted an extreme deviation from reasonable standards of conduct and that Mac acted in a fraudulent, malicious, wanton or oppressive manner, before awarding punitive damages to Griffin.

2. Whether the trial court abused its discretion in allowing former Mac distributors to testify about their relationships with Mac because the probative value of their testimony was outweighed by its prejudicial nature and/or because the testimony was presented to demonstrate that Mac had a propensity or proclivity to act in a manner consistent with how these distributors testified.

## ANALYSIS

### I. THE DISTRICT COURT DID NOT ERR BY PROVIDING A PUNITIVE DAMAGES INSTRUCTION TO THE JURY WHICH DID NOT INCLUDE A REQUIREMENT THAT THE JURY FIND MAC'S ACTIONS CONSTITUTED AN EXTREME DEVIATION FROM REASONABLE STANDARDS OF CONDUCT.

■ As a preliminary matter, we note the standard of review for this first issue on appeal. When this Court reviews jury instructions on appeal, we are required to determine whether the jury was properly and adequately instructed. Therefore, we must review the instructions and ascertain whether the instructions, when considered as a whole, fairly and adequately present the is-

sues and state the applicable law. *Manning v. Twin Falls Clinic & Hosp., Inc.,* 122 Idaho 47, 50, 830 P.2d 1185, 1188 (1992); *Leazer v. Kiefer,* 120 Idaho 902, 904, 821 P.2d 957, 959 (1991). Reversible error only occurs when an instruction misleads the jury or prejudices a party. *Manning,* 122 Idaho at 51, 830 P.2d at 1189; *Salinas v. Vierstra,* 107 Idaho 984, 991, 695 P.2d 369, 376 (1985).

The jury instruction on exemplary damages given by the district court in this case provided:

> If you find in favor of Griffin on the *fraud claim* and if you find that Mac's acts proximately caused injury to Griffin and that the *acts were an extreme deviation from reasonable standards of conduct* and that the acts were performed by Mac with an intent to defraud, you may, in addition to any compensatory damages to which you find Griffin entitled, award to Griffin an amount which will deter Mac and others from engaging in similar conduct in the future.
>
> Alternatively, if you find in favor of Griffin on the *consumer protection claim,* and if you find that Mac's acts proximately caused an ascertainable loss to Griffin, and if you find that *Mac's conduct constituted a repeated or flagrant violation of the Consumer Protection Act,* you may, in addition to any compensatory damages to which you find Griffin entitled, award to Griffin an amount which will deter Mac and others from engaging in similar conduct in the future.
>
> You may make, however, only one award for exemplary damages, and only under one of the two circumstances outlined in this instruction.

(Emphasis added.)

The jury found in favor of Mac on the fraud claim. Therefore, the first portion of the above instruction became moot. The jury did, however, find that Mac had violated the ICPA, and pursuant to the second portion of the instruction, further found that Mac's conduct constituted a repeated or flagrant violation of the Act, and thus awarded punitive damages. The punitive damage language in the portion of the instruction regarding Griffin's claim for fraud, *i.e.,* "ex-

treme deviation from reasonable standards of conduct", comes from the long history of punitive damage case law in Idaho. *See, e.g., Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986); *Linscott v. Rainier Nat. Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980). The punitive damage language in the portion of the instruction regarding Griffin's claim for violations of the ICPA, *i.e.*, conduct constituting repeated or flagrant violations of the ICPA, is found in I.C. § 48–608 of the Act which provides that: "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper in cases of repeated or flagrant violations." Mac claims that the instruction was improper because in order to award punitive damages under *any* cause of action, a jury must find that the party's actions constituted an extreme deviation from reasonable standards of conduct. Thus, Mac argues, even though the instruction was proper with respect to awarding punitive damages under a fraud theory, the alternative theory instruction on violation of the ICPA, did not contain the requisite "extreme deviation" language, and was therefore improper.

Mac further argues that I.C. § 6–1604 constitutes another limitation on the award of punitive damages with the following language:

(1) In any action seeking recovery of punitive damages, the claimant must prove, by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

I.C. § 6–1604(1) (1987). Mac claims that this statute is simply a codification of the pre-existing punitive damage case law. *Windsor v. Guarantee Trust Life Ins. Co.*, 684 F.Supp. 630, 633 (D.Idaho 1988). Thus, the thrust of Mac's argument is that the jury instruction on the award of punitive damages for violations of the ICPA must have contained the "extreme deviation" or "wanton, malicious or outrageous" language, and that the "repeated or flagrant" language of I.C. § 48–608 was

not stringent enough upon which to base an award of punitive damages.

Although Griffin does not dispute Mac's outline of general common law standards for punitive damages in Idaho, he argues that the legislature has the power to change the common law rule, and that where the legislature has enacted a specific standard for punitive damages, *i.e.*, I.C. § 48–608, that standard governs rather than the common law standard. Griffin relies on our decision in *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), to support his position that this Court has recognized that the legislature may abrogate the common law.

Griffin further argues that I.C. § 6–1604 does not apply to this case because most of the conduct which gave rise to his claim occurred prior to July 1, 1987, the effective date of the statute. Griffin argues, even assuming *arguendo* that his cause of action arose after July 1, 1987, I.C. § 6–1604 would still not apply because it is a general statute as opposed to the ICPA which is a specific statute. He asserts that a specific statute controls over a general one. *Farmers Nat. Bank v. Wickham Pipeline Const.*, 114 Idaho 565, 759 P.2d 71 (1988).

■ With respect to the applicability of I.C. § 6–1604, we agree with Griffin. According to the record in this case, most of the acts or omissions which led to the accrual of Griffin's cause of action occurred before July 1, 1987. In late 1985, Griffin was approached to become a distributor and signed an application for a distributorship. In January 1986, Griffin attended a training seminar at which time he signed a Distributor Agreement, an Inventory Purchase Order and Security Agreement. Griffin became a distributor in February 1986. In March 1986, Griffin attended the seminar where he was trained on the uses and benefits of the financing program known as Mac Cap. At the trial in this case, Griffin testified that by the autumn of 1986, his completed business average began to decline and that he was having difficulty meeting expenses. Griffin further testified that by July 1987, he had become "disgusted" with Mac Tools and "wanted

out". He stopped working in December 1987. Based upon the foregoing, it is clear that most, if not all, of the events leading to Griffin's cause of action occurred well before the effective date of I.C. § 6–1604 which was July 1, 1987. Section 18 of S.L.1987, ch. 278 provides: "The provisions of this act shall take effect on July 1, 1987, provided however, that Section 1 through 11 shall apply only to causes of action which accrue on and after July 1, 1987." I.C. § 6–1604 is found in Section 1 of chapter 278 of the 1987 Session Laws. Therefore, I.C. § 6–1604 is inapplicable to this case. Because we find that this statute was not in effect at the time that the cause of action arose, we do not address Griffin's specific statute versus general statute argument.

■ With respect to Mac's argument that the jury instruction on punitive damages was improper because it did not contain the "extreme deviation" language, we disagree. We hold that the jury instruction was proper because it quoted the statutory standard for the award of exemplary damages. I.C. § 48–608 is remedial in nature; when a party brings an action for violation of the ICPA, that party does not have to show an extreme deviation from reasonable standards of conduct in order to be awarded punitive damages, but rather must show repeated or flagrant violations of the ICPA. I.C. § 48–608 contains its own remedies. The only standard the jury must follow is that prescribed in the Act itself, i.e., repeated or flagrant violations. The enactment of I.C. § 48–608 is not an abrogation of existing common law relating to punitive damages, nor is it a codification of the common law. Rather, the legislature has created something entirely new, i.e., a new remedy for repeated and flagrant violations of the ICPA. The legislature is not required to adopt prior case law in order to promulgate a new remedy. Thus, the jury instruction given on the issue of punitive damages was proper with respect to the fraud claim and it was proper with respect to the ICPA claim. We cannot say that the instruction misled the jury or prejudiced any party. Thus, the award of $500,-000 in punitive damages to Griffin is affirmed.

We decline to reach the issue of due process ostensibly raised by Mac in its initial brief. In footnote 7 of its brief, Mac states as follows: "Quite apart from the violation of Idaho statutory and common law, the failure to provide a jury with adequate guidance in connection with its consideration of punitive damages can result in the violation of a defendant's due process rights." (Emphasis added.) This statement in a footnote does not adequately raise the due process issue. At this point in the briefing, Mac is not even arguing that its due process rights have been violated. It simply states, as an aside, that a failure to provide adequate instructions to a jury can or may result in a violation of someone's due process rights. The fact that Mac makes a full blown argument in its reply brief does not adequately raise the issue for appeal purposes. I.A.R. 35(a)(4).

Another issue ostensibly raised at oral argument which we will not address is whether the punitive damage issue should ever have been submitted to the jury in the first place. At the hearing before this Court, Mac argued that because the language in I.C. § 48–608 states that the "court may, in its discretion, award punitive damages ...", the issue of whether Griffin was entitled to punitive damages under the ICPA should never have been presented to the jury. (Emphasis added.) However, when asked by this Court at the hearing whether Mac had raised this issue at trial, counsel for Mac responded in the negative. Nor was the issue raised in Mac's brief. Thus, this issue is not properly before the Court.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING FORMER MAC DISTRIBUTORS TO TESTIFY ABOUT THEIR RELATIONSHIPS WITH MAC BECAUSE THE TESTIMONY WAS RELEVANT TO SHOW REPEATED VIOLATIONS OF THE ICPA PURSUANT TO I.R.E. 401.

At the trial in this matter, the district court allowed Griffin to call as witnesses four ex-distributors of Mac. Mac argues that the court erred in allowing this testimony because, first, it was irrelevant, overly broad, and that the presumed probative value was

outweighed by its prejudice to Mac; and secondly, Mac claims that the jury instruction relating to this testimony was insufficient to mitigate the prejudice to Mac.

■ Our standard of review with respect to whether the former Mac distributors' testimony was admissible is whether there is a clear and manifest abuse of discretion. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990) (*citing State v. Terry*, 98 Idaho 285, 286–87, 561 P.2d 1318, 1319–20 (1977)); *Baker v. Shavers, Inc.*, 117 Idaho 696, 698, 791 P.2d 1275, 1277 (1990); *Berning v. Drumwright*, 122 Idaho 203, 207, 832 P.2d 1138, 1142 (Ct.App.1992). The trial court has broad discretion in the admission of evidence at trial and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion. *Id.* However, the question of relevancy under I.R.E. 402 is not a discretionary matter because there is no issue of credibility or finding of fact for the trial court to resolve prior to deciding whether to admit the evidence. Thus, this Court reviews the trial court's relevancy decisions under the *de novo* standard of review. *Lubcke v. Boise City Ada County Housing Authority*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993).

## A. *The Testimony Was Not Irrelevant or Overly Broad and the Probative Value Was Not Outweighed by its Prejudice.*

With respect to Mac's first argument that the testimony of these former Mac distributors was irrelevant and prejudicial, Mac claims that not one of them presented any testimony regarding the business relationship entered into between Mac and Griffin, but rather testified that Mac had made certain representations to them regarding their potential success as Mac distributors. Thus, Mac argues that this testimony was improperly offered to purposefully create for the jury a pattern on the part of Mac to deceive distributors for the purpose of gaining more revenue for Mac. Mac claims that the testimony was presented so that the jury would believe that if other distributors had complaints about Mac, then Griffin's complaints about Mac must be true. Mac argues that this evidence is inadmissible because, pursuant to I.R.E. 404, evidence of character or a trait of a person's character is not admissible to show that a person acted in conformity therewith on a particular occasion, and that evidence of wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with that character.

Griffin argued that the evidence was relevant pursuant to I.R.E. 401 to show "repeated or flagrant" violations of the ICPA by Mac in order to recover punitive damages under I.C. § 48–608. We agree. I.R.E. 401 provides that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Specifically at issue in this case was whether Mac's recruiting practices, its use of allegedly unsubstantiated income and operating expense figures, and its failure to disclose the high dealer turnover ratio to prospective recruits was a pattern and practice of Mac or simply a misunderstanding by Griffin of Mac's recruitment efforts. A second issue in this case was whether Griffin's distributorship failed because his assigned customer base was continually being diminished and he could not make a living due to Mac's alleged policy of creating more open territories and recruiting more and more distributors, or whether he was just a poor businessman. Griffin raised a third issue as to whether Mac's representations to him regarding the use and benefits of the new Mac Cap program were true, whether its recourse feature had been fully disclosed to him, and what efforts were made by Mac, if any, to collect Mac Cap accounts after a customer defaulted or after a dealer terminated.

■ We hold that the testimony of the four ex-distributors from the same time frame and geographical area was relevant to the issues before the trial court. Griffin's counterclaim asserted that Mac's recruitment, training, supervision, and termination practices were founded upon material misrepresentations and omissions regarding Mac's distributorship program. The misrepresentations allegedly included statements Mac made regarding the financial analysis

and business operating expenses calculated by Mac for its prospective distributors, Mac's income projections, the adequacy of the customer territory assigned by Mac, the level of initial and ongoing training Mac would provide to its distributors, the termination rate of its distributors, the benefits and risks inherent in the Mac Cap finance program, and the personal liability and risk incurred by the distributors. All of these alleged misrepresentations pertained, at least in general, to Mac's relationships with other area distributors. The testimony was not offered as character evidence of Mac in order to show that Mac acted in conformity therewith in its dealings with Griffin. Thus, we hold that the district court did not err in allowing the testimony of the other Boise area distributors because it was relevant and had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable." I.R.E. 401.

■ With respect to Mac's argument that the testimony's prejudicial impact exceeded whatever relevance it had, we also disagree. Griffin was entitled to produce relevant evidence to counter Mac's claims that it was Griffin, not Mac, who caused the failure of his business. In response to Mac's claims, Griffin produced the testimony of ex-Mac distributors who operated their businesses in the same time period and geographic area as did Griffin, who were subjected to the same policies and practices, and who with one exception had lasted in business for the same period of time or less than Griffin, with the same consequences.

The testimony of the ex-distributors was also highly relevant to show repeated or flagrant violations of the ICPA, one of Griffin's claims against Mac. As noted above, the express language of I.C. § 48–608 provides that punitive damages may be awarded in cases where "repeated or flagrant" violations of the ICPA are shown. Since Griffin was seeking punitive damages based in part upon such violations of the ICPA, the testimony of the other distributors was relevant to establish repeated or flagrant violations of the Act, and thus was properly admitted. *Compare Coast-to-Coast Stores, Inc. v. Womack–Bowers, Inc.,* 818 F.2d 1398 (8th Cir.1987).

■ Finally, Mac argues that the prejudicial nature of the distributors' testimony was exacerbated by the manner in which Griffin presented his case. We should note here that the trial court has broad discretion over the conduct of the trial, including the order of witnesses. *Nottingham v. McCormick,* 95 Idaho 188, 192, 505 P.2d 1260, 1264 (1973); *State ex rel. Symms v. Collier,* 93 Idaho 19, 21, 454 P.2d 56, 58 (1969). Mac claims that the prejudice caused to it was increased because the four former distributors were the first four witnesses to testify for Griffin, and because Griffin's counsel made references to their testimony during the examination of other witnesses and during closing arguments. We disagree. While counsel for Mac did object during the trial to the general nature of the testimony and the district court assumed this to be a continuing objection, upon a review of the trial record, it does not appear to the Court that Mac objected to the references to the former distributors' testimony made by Griffin's counsel during his examination of subsequent witnesses or during Griffin's closing argument. Therefore, Mac has waived its right to object to Griffin's manner of presentation of this evidence as prejudicial. We find no error with respect to the order in which Griffin called his witnesses.

**B.** *The Jury Instruction Relating to the Testimony of the Former Distributors was Sufficient to Mitigate any Prejudice to Mac.*

Mac complains that the verbal instruction given by the district court to the jury prior to the testimony of the former distributors was "grossly deficient" for the following reasons. First, it failed to specifically advise the jury that the evidence presented by these distributors could only be considered if the jury first determined that Mac had violated the ICPA. Second, it failed to expressly advise the jury in clear and unconfusing language that the testimony of the distributors could not be used to determine whether the ICPA was violated by Mac as to Griffin. Third, it did not make clear that repeated violations are relevant only to the issue of punitive damages under the ICPA. Finally, it failed

to advise the jury that punitive damages could only be awarded if the jury first determined that Mac was guilty of repeated or flagrant violations of the ICPA. We hold that the instructions given by the district court to the jury on the manner in which the former distributors' testimony may be considered were sufficient.

■ With respect to Mac's first argument, we find that the court's limiting instruction, quoted below, was sufficient:

And I have not obviously really given you very much of a clue of what the law is and with respect to the Consumer Protection Act, *but one of the issues that you may be asked to decide is that if—and I'm saying "if" you find that Mac did violate the Consumer Protection Act,* then you may also be asked whether or not this was single incident, or whether or not it was— I'm trying to think what the—whether it was a repeated course of conduct.

And I believe from what I've been told, that Mr. Saxton, perhaps other people, will be testifying to what happened from their perspective to them when they were involved with Mac Tools as a distributor. *And this is being presented to you solely on the issue of whether or not, if you find there were violations of the Consumer Protection Act, whether those violations were repeated violations.*

(Emphasis added.) Clearly, this portion of the instruction, especially the highlighted sections, advised the jury that the distributors' testimony could only be considered if they first determined that Mac violated the ICPA.

■ Mac's second argument appears to address the issue of character evidence and whether Mac acted in conformity therewith on a particular occasion. The instruction addresses this concern as well:

They're not—I'm not sure how to put this—but basically it's not a situation where you're allowed to say, "Okay, well, if Mr. Smith ran the red light three times last week, that means that he must have run the red light today and caused the accident." *In other words, you can't look at other conduct with other people at other times to prove that a particular incident occurred today.*

This type of evidence just goes to the question of whether or not there were repeated violations, and that's the reason why that's been presented to you.

(Emphasis added.) This portion of the instruction clearly informed the jury that they could not use the distributors' testimony concerning what happened to them, to find that Mac behaved in the same manner toward Griffin.

Regarding Mac's third and fourth complaints about the district court's instruction with respect to punitive damages, we find that although the instruction given to the jury immediately prior to the distributors' testimony did not specifically address the issue of punitive damages, Jury Instruction No. 35, presented to the jury at the conclusion of the trial, adequately advised the jury that repeated violations were relevant only to the issue of punitive damages under the ICPA, and it did advise the jury that punitive damages could only be awarded if the jury first determined that Mac was guilty of repeated or flagrant violations of the ICPA. We therefore hold that the district court's instruction to the jury regarding the former distributors' testimony was sufficient to prevent prejudice to Mac. The district court is thus affirmed.

## III. CONCLUSION

We hold that the district court did not err by providing a punitive damages instruction to the jury which did not include a requirement that the jury find Mac's actions constituted an extreme deviation from reasonable standards of conduct. In order to recover punitive damages under I.C. § 48–608, a party must show repeated or flagrant violations of the ICPA. This is the only standard the jury must follow when a party seeks punitive damages for violations of the ICPA. Thus, we hold that the jury instruction given by the district court on this issue was proper.

We further hold that the district court did not abuse its discretion in allowing the testimony of four former Mac distributors. The testimony of the ex-distributors from the

**202**

same time frame and geographical area was relevant under I.R.E. 401 to show repeated or flagrant violations of the ICPA, and was not offered as character evidence of Mac. We further hold that the jury instruction relating to the testimony was sufficient to mitigate any prejudice to Mac. Accordingly, the judgment of the district court is affirmed.

Costs on appeal are awarded to respondents. No attorney's fees on appeal.[1]

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.

---

1. Although respondents may have been entitled to attorney's fees under I.C. § 48–608(4), they did not present any argument that they are so entitled, either in their brief or at the hearing before the Court.