900 P.2d 1367

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles W. SEITTER, Defendant–Appellant.**

**No. 21680.**

Supreme Court of Idaho,
Boise, February 1995 Term.

Aug. 18, 1995.

Stanton P. Rines, Jr., Kendrick, for appellant.

Alan G. Lance, Atty. Gen.; Douglas A. Werth, Deputy Atty. Gen., for respondent. Douglas A. Werth, argued.

JOHNSON, Justice.

This is a criminal case involving drugs. The dispositive issue concerns the admission of evidence that we conclude was not relevant. Because we also conclude this error was not harmless, we reverse and remand for a new trial. We also provide the trial court direction concerning the instruction that should be given on the question of possession.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Law enforcement officers executed a search warrant for a building in Lewiston known as the clubhouse of the Hiwaymen Motorcycle Club (the club). Because no occupants of the clubhouse were present, the officers broke the lock to enter. The clubhouse consisted of a large room with a pool table and bar, a kitchen area, a bathroom, and two bedrooms.

In the closet of the southwest bedroom (the bedroom), the officers found a bag of sixteen grams of methamphetamine on a beam scale. The bag was hidden behind several objects and was not readily apparent upon opening the closet.

The bedroom also contained a bed, a nightstand, a desk, and a cabinet. In a desk drawer, the officers found two bags of white powder which were not controlled substances, but which were never specifically identified. The officers also found in the closet, the desk, and a blue overnight bag, a total of forty-six small plastic baggies of the type used by drug dealers. There were five firearms, some loaded, in the bedroom. One of these was on the nightstand; three were in the closet; one was in the cabinet.

The officers also found several items in the bedroom which appeared to belong to Charles Seitter, the president of the club. These items included the following:

(1) three envelopes addressed to Seitter at the clubhouse;

(2) Seitter's Washington driver's license and driving record;

(3) tattooing equipment—Seitter was known as a tattoo artist; and

(4) a list of firearm serial numbers with Seitter's fingerprint on it.

Neither the bedroom nor anything in it was locked.

Seitter was charged with possession of a controlled substance with intent to deliver and failure to affix a controlled substance tax stamp. The trial court admitted into evidence, over Seitter's relevancy objections, three of the firearms and the two bags of unidentified white powder, which the prosecution argued to the jury were cutting agents.

The trial court refused to instruct the jury, as requested by Seitter, that knowledge of the presence of drugs cannot be proven by inference when the defendant is in non-exclusive possession of the premises.

Seitter was convicted of both counts and appealed. This Court assigned the case to the Court of Appeals, which affirmed. This Court then granted review.

## II.

## THE TWO BAGS OF UNIDENTIFIED WHITE POWDER WERE NOT RELEVANT, AND THEIR ADMISSION WAS NOT HARMLESS ERROR.

Seitter asserts that the trial court should not have admitted the two bags of unidentified white powder because they were not relevant. We agree. We also conclude that the admission of this evidence was not harmless error..

An expert witness for the state testified that the two bags did not contain controlled substances, but he could not positively identify their contents. Later, after the bags were admitted in evidence, a narcotics agent testified that white powdery substances are commonly used as cutting agents by drug traffickers. The trial court overruled Seitter's objection to the agent's testimony. During closing argument, the prosecutor stated that the two bags contained a cutting agent. Seitter did not object to this statement.

■ Relevance is a question of law over which the Court exercises free review. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). The question under I.R.E. 401 is whether the bags of white powder tend to prove that Seitter possessed the methamphetamine with an intent to deliver.

■ The two bags are relevant to the question of Seitter's possession of the methamphetamine with the intent to deliver only if they contained cutting agents. There was no proof that the contents of the bags were cutting agents. At the time of the admission of the two bags, there was not even any reference in the evidence to white powdery substances often being used as cutting agents. The two bags were not conditionally admitted, subject to being connected up later by other competent evidence. *See Nottingham v. McCormick*, 95 Idaho 188, 192, 505 P.2d 1260, 1264 (1973). Therefore, the bags of unidentified white powder were not relevant to the question of Seitter's possession of the methamphetamine with intent to deliver, and should not have been admitted.

■ We next address whether the admission of the two bags was harmless error pursuant to I.C.R. 52 ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.") For an error to be harmless, we " 'must declare a belief, beyond a reasonable doubt, that there was no reasonable possibility that [the] evidence complained of contributed to the conviction.' " *State v. Zimmerman*, 121 Idaho 971, 976, 829 P.2d 861, 866 (1992) (quoting *State v. Sharp*, 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980)).

There was only circumstantial evidence that Seitter possessed the methamphetamine with intent to deliver. It is undisputed that Seitter used the bedroom, as the presence of his personal belongings demonstrates. Yet, there was also evidence that other people commonly had access to the bedroom. The small plastic baggies found in the desk and closet were evidence of an intent to deliver and linked the desk, which contained Seitter's personal belongings, and the closet where the methamphetamine was found. In addition, there was testimony that the quantity of methamphetamine found was inconsistent with personal use.

One officer testified that subsequent to the search of the clubhouse he served Seitter with a subpoena requiring Seitter to provide handwriting exemplars, fingerprints, and palm prints for a comparison with a list of firearms. The list had been taken in the search of the bedroom. The officer testified as follows concerning his conversation with Seitter about the list and the firearms:

Mr. Seitter advised me that he had written a list and that in fact the guns that were taken were his firearms.

When the officer was asked to state what Seitter said on this occasion, the officer testified:

As best I can recall he responded, "Well, I wrote the list. Those are my guns." Only one of the three firearms found in the closet at the time of the search was loaded. This was an M–1 carbine. Neither the M–1 carbine nor the other two firearms found in the closet, a Mack 10 semi-automatic handgun and a .410 shotgun, were included on the list Seitter said he had written.

While this evidence provides some basis for the state to argue that Seitter had a loaded firearm in the closet, the testimony is ambiguous. It is unclear whether Seitter admitted that all the firearms seized from the bedroom, or only those on the list, were his. In any event, the presence in the closet of firearms belonging to Seitter would only be evidence of Seitter's possession of the other contents of the closet, not of intent to deliver methamphetamine. No other items found in the closet were identified as belonging to Seitter.

Because the entire case against Seitter was circumstantial, the two bags of white powder had special significance. If the jury believed the white powder in the two bags was a cutting agent, as the prosecution argued the jury should, this was strong evidence that Seitter knew of the methamphetamine in the closet, because of the presence of the powder in the desk with Seitter's personal belongings. It was also powerful evidence of Seitter's intent to deliver the methamphetamine.

Considering all the other circumstantial evidence concerning Seitter's intent to deliver, we are not convinced beyond a reasonable doubt that there was not a reasonable possibility that the admission of the two bags of unidentified white powder contributed to the conviction.

## III.

## AT THE NEW TRIAL, THE TRIAL COURT SHOULD GIVE THE NEW ICJI 421 TO INSTRUCT THE JURY CONCERNING POSSESSION.

Seitter asserts that the trial court should have instructed the jury on the permissible inferences regarding knowledge of a controlled substance where the defendant does not have exclusive control of the premises where the substance was found. Although our resolution of the issue concerning the admission in evidence of the two bags necessitates a new trial for Seitter, we address the instruction issue because it is a question of law which may arise again during the new trial, and it is necessary to a final determination of the case. I.C. § 1–205 (1990).

Seitter was tried on a constructive possession theory, which required that the state prove that Seitter had knowledge of the methamphetamine, and control over the bedroom. *See State v. Randles*, 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990). There was a risk that the jury might infer that Seitter knew of the methamphetamine in the closet simply because of the presence of Seitter's belongings in the bedroom. According to *Randles*, however, when a person shares control of property where drugs are found, there must be other evidence of knowledge besides the fact that the person has a possessory interest in the property. *Id.*

Seitter contended that the clubhouse was not a private residence, and that numerous people could have hidden the methamphetamine in the closet without his knowledge. For example, Seitter arrived at the clubhouse during the search with a woman who retrieved a purse from the bedroom. Another member of the club, who frequently stayed elsewhere in the clubhouse during the months preceding the search, testified that while Seitter often slept in the bedroom and kept some belongings there, he also kept possessions at his mother's house in Clarkston, Washington, and would sometimes be absent from the clubhouse for stretches of time. According to this other member, there would be times when other people would stay in the bedroom, both when Seitter was at the clubhouse and on occasions when he was not present. Parties of up to forty people were held at the clubhouse. Neither the bedroom nor the closet was locked.

The issue presented by Seitter concerning his requested instruction is now resolved by

a new criminal jury instruction defining possession. The Court has recently recommended that trial courts use this new instruction, unless a different instruction would more adequately, accurately or clearly state the law. Preface to Idaho Criminal Jury Instructions (ICJI) (1995). This new instruction reads as follows:

> A person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it. [For the charge of Failure to Affix Tax Stamp[s], the term "possession" also includes holding, selling, manufacturing, acquiring, producing, purchasing, shipping, transporting, transferring, or importing into Idaho a controlled substance.] [More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.]

ICJI 421 (1995).

The comment to this instruction states, "There is no need to attempt to distinguish further between actual and constructive possession and sole and joint possession." ICJI 421 (1995).

ICJI 421 provides that knowledge of the controlled substance and physical control of the controlled substance must be independently proven beyond a reasonable doubt, by either circumstantial or direct evidence. This addresses the Court's concern in *Randles* concerning improper inferences. No further instruction is necessary to "accurately state the law." On retrial, the trial court should give the pertinent portions of this new instruction.

## IV.

### CONCLUSION.

Seitter did not preserve for appeal his assertion that the trial court should not have admitted the firearms because it was cumulative evidence and because it depicted Seitter as a dangerous person. Therefore, we do not address these issues.

Because we conclude that a new trial is required, we find it unnecessary to address whether there was sufficient evidence to support the jury's verdict.

We reverse Seitter's convictions and remand the case to the trial court for a new trial.

McDEVITT, C.J., and LEGGETT, J. Pro Tem., concur.

SILAK, Justice, dissenting.

I respectfully dissent from that part of the Court's opinion which holds that the admission of the two bags of unidentified white powder was not harmless error, although I agree that the two bags of white powder were not relevant and should not have been admitted into evidence.

As this Court stated in *State v. Raudebaugh*, 124 Idaho 758, 767, 864 P.2d 596, 605 (1993), if there is not a reasonable possibility that evidence has contributed to the conviction when viewed in light of the evidence as a whole, the evidence may be declared harmless beyond a reasonable doubt. *Citing State v. Pizzuto*, 119 Idaho 742, 762, 810 P.2d 680, 700 (1991). When considered with the evidence as a whole, the white powder appears non-contributory to conviction because there is substantial other evidence in the record of Seitter's possession with intent to deliver.

Seitter argues on appeal to this Court that the only exhibits linking him to the methamphetamine found in the closet were the two bags of white powder discovered in the desk drawer. There is, however, other evidence that Seitter possessed the items in the closet, principally two of the three guns found in the closet. A list of firearms was seized from a filing cabinet under the desk in the bedroom. The list bore Seitter's fingerprints, and a police officer testified, as quoted by the Court's opinion, that Seitter told him, "Well, I wrote the list. Those are my guns." Unlike the Court, I do not find the testimony of the officer ambiguous. Moreover, it is immaterial whether the loaded M–1 carbine was on the list: there were two other guns in the closet that the testimony and evidence establish were Seitter's guns. The fact that Seitter kept valuable personal possessions such as guns in the closet is strong circumstantial evidence that he possessed the methamphet-

amine, baggies and beam scale found in the closet. The baggies and beam scale were evidence that the controlled substance was possessed with intent to deliver.

Ten to twelve baggies similar to those in the closet were found in the upper left-hand drawer of the desk in the bedroom. The desk contained items personal to Seitter, as listed in the Court's opinion. Thirty baggies were found in a blue overnight case on top of the locking cabinet where Seitter kept his tattoo equipment.[1] The evidence presented to the jury was substantial that Seitter exercised control over the desk and file cabinets, and that baggies of the type used by drug dealers were found in those locations.

I therefore conclude that the admission of the two bags of white powder was harmless error because in viewing the evidence as a whole I do not believe that their admission might have contributed to Seitter's conviction. I believe that the admission of such evidence was harmless beyond a reasonable doubt.

TROUT, J., concurs.

1. There were two file cabinets: one under the desk, and one mounted over the desk—this latter cabinet was locked and contained Seitter's tattoo equipment.