971 P.2d 1119

**EMPIRE LUMBER COMPANY,**
a Washington corporation,
Plaintiff–Respondent,

v.

**THERMAL–DYNAMIC TOWERS, INC.,**
d/b/a Thermal–Dynamic Cooling
Towers, Defendant–Appellant.

No. 23062.

Supreme Court of Idaho,
Coeur d'Alene, Oct. 1997 Term.

Nov. 30, 1998.

Rehearing Denied Feb. 18, 1999.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, and Lynch & Associates, Boise, for appellant. Robert E. Bakes argued.

Charles A. Brown, Lewiston, for respondent.

SILAK, Justice

This is an appeal from a judgment entered on a jury verdict in favor of the respondent Empire Lumber Company (Empire), lessor, and against the appellant Thermal–Dynamic Towers, Inc. (TDT), lessee, for negligence and breach of a lease of space in a warehouse resulting from a fire which destroyed the warehouse. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In 1979, Empire purchased a nine-acre parcel of property in Post Falls, Idaho, upon which three buildings were located. The building which burned was a large warehouse with a concrete floor, cinder block walls, and a wooden truss roof. The building contained approximately 32,000 square feet of open undivided floor space and 4,000 square feet of office space on a mezzanine. The other two buildings on the property were leased to a trucking/leasing company called Requipco. One of those structures contained a diesel engine and pump which allegedly was to supply water for fire suppression purposes for the warehouse and the other building leased to Requipco.

In November 1989, Empire and TDT entered into a five month lease whereby Empire leased to TDT 38% of the warehouse. TDT used the leased space to construct fiberglass components for cooling towers which TDT used in its business of manufacturing cooling equipment. TDT was in the process of constructing a new manufacturing facility a few miles away in Rathdrum, Idaho, and needed the short term lease until the facility was completed and TDT's entire operation could be moved.

The original term of the lease (which was drafted by Empire) ran from November 22, 1989 through April 22, 1990. Paragraph 5 of the lease provided that, "[e]xcept for reasonable wear and tear and damage by fire or unavoidable casualty, Lessee will at all times preserve said premises in as good repair as they now are or may hereafter be put to...." Paragraph 9 of the lease provided that, "Lessee will insure said premises for fire protection of $___ and on this day furnish a binder naming Lessor as insured; and the liability insurance shall show Lessor as

298

additionally insured, and Lessee shall pay all premiums."

The record indicates that the parties, in negotiating the lease, agreed that TDT would not be required to provide fire insurance on the leased building, and that Empire would provide the insurance. The letters "N/A" were typed into the blank space in paragraph 9 of the lease indicating that although normally the lessee was to provide fire insurance in a certain dollar amount, in this case, it was not applicable. In November 1989, Empire purchased fire insurance on the warehouse for a one year period. At the end of the initial term of the lease in April 1990, the parties continued the lease on a month-to-month basis due to TDT's new facility not being completed. Although the parties allegedly never again discussed the issue of insurance, in November 1990, Empire extended the fire insurance through February 1991, and again through April 22, 1991. At the end of April 1991, TDT gave a 30–day written notice to Empire that it would be vacating the building on or before May 31, 1991. Empire's request of its insurer to extend the fire insurance one more month was either denied and/or was cost prohibitive.

On Sunday, May 19, 1991, two juveniles, ages 10 and 11, entered the warehouse through an unlocked door and engaged in a game in which they placed wadded-up newspaper inside a plastic sack, set the paper on fire, and then tossed the sack back and forth. At one point, the bag went over the head of one of the youths, landing on some flammable pallets. A fire started, spread and destroyed the warehouse. The pallets had been stored there by employees of TDT to block an open doorway. The overhead door which would have secured the open doorway had been knocked off its rollers several days earlier by a forklift operated by a TDT employee and had not yet been repaired. Testimony indicated that there was also a hazardous and highly flammable material in the warehouse at the time of the fire called "Philly Clad." Apparently, this "Philly Clad" had been left in the warehouse by TDT in five gallon cans, numbering approximately twenty. One of the cans had been punctured on the day the fire started and the "Philly Clad"

spread across the floor. There was also testimony that TDT had left the valve to the overhead sprinkler system in the "off" position.

In May 1993, Empire filed suit against TDT alleging breach of express and implied contract, breach of the Uniform Fire Code, and attractive nuisance. A claim for negligence was added a year later. TDT thereafter moved for summary judgment as to all claims based upon paragraph 5 of the lease. The district court denied the motion except as to the attractive nuisance claim. The court ruled that TDT could not rely on the contract exclusion for "damage by fire" if it was negligent. After a two and a half week trial, a jury returned a verdict in favor of Empire in the amount of $550,593.70, finding both breach of contract and negligence on the part of TDT. TDT's post-trial motions were denied. The district court entered a final amended judgment for Empire in the amount of $550,593.70, together with attorney fees on the contract claim in the amount of $114,416.00, and $9,460.95 in costs, for a total judgment of $674,470.65. TDT appeals from the denial of its motion for summary judgment, from the denial of its post-trial motions for JNOV, new trial and remittitur, and from the judgment and amended judgment entered by the district court.

## II.

### ISSUES ON APPEAL

A. Whether the district court erred in ruling that paragraph 5 of the lease did not relieve TDT of liability for fires caused by its negligent actions.

B. Whether the district court erred in refusing to place the juveniles' and Requipco's names on the special verdict form and in refusing to instruct the jury on superseding cause.

C. Whether the district court erred in refusing to instruct the jury on the defenses of waiver and estoppel.

D. Whether the district court erred in redacting paragraph 9 of the lease, and in giving Jury Instruction Nos. 12 and 13.

E. Whether the district court abused its discretion in restricting the use of Clarence Kast's testimony and in admitting the opinion evidence of Wayne Syth and David Klaue.

F. Whether the district court erred in awarding costs and attorney fees to Empire.

Empire raises the following additional issue on appeal:

G. Whether Empire is entitled to attorney fees on appeal pursuant to paragraph 20 of the lease, I.A.R. 41, I.C. § 12–120(3) and I.C. § 12–121.

## III.

## ANALYSIS

**A. The District Court Correctly Ruled That Paragraph 5 Of The Lease Did Not Relieve TDT Of Liability For Fires Caused By Its Negligent Actions.**

TDT claims that paragraph 5 of its lease with Empire relieves TDT from all liability for damage caused by fire. The pertinent portion of paragraph 5 provided: "[E]xcept for reasonable wear and tear and damage by fire or unavoidable casualty, Lessee will at all times preserve said premises in as good repair as they now are or may hereafter be put to...." Whether such an exculpatory clause relieves a tenant of liability for a fire which is the result of its own negligence is an issue of first impression in Idaho. We hold that this particular exculpatory clause regarding who bears the risk of loss for fire does not excuse TDT from liability if its negligent actions caused the fire.

 This Court has held that parties to a contract, such as a lease, may agree to limit liability for negligence or contractually waive rights and remedies, subject to certain exceptions not applicable in the present case. *Lee v. Sun Valley Co.,* 107 Idaho 976, 978, 695 P.2d 361, 363 (1984); *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 178, 595 P.2d 709, 712 (1979). However, this Court has also noted that courts look with disfavor on such attempts to limit liability and will strictly construe these provisions against the party relying on them. *Anderson,* 100 Idaho at 178, 595 P.2d at 712. Contract clauses purporting to exclude liability for negligence must speak clearly and directly to the particular conduct of the defendant which caused the harm at issue. *Id.*

In *Sears, Roebuck and Co. v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957), the Iowa Supreme Court held that a clause similar to the one in the present case did not clearly express the parties' intention to relieve the tenant from liability for fire caused by its own negligence. The exculpatory clause provided: "Tenant agrees that ... upon the termination of this lease the demised premises will be in substantially as good condition as received, loss by fire, tornado, earthquake or any unavoidable casualty and ordinary wear and tear excepted." *Id.* at 464. The Iowa Supreme Court, in strictly construing the exculpatory clause against Sears, held that the lease did not clearly express the intention of the parties to relieve Sears from liability for fire caused by its own negligence. The court noted that if the parties truly intended to relieve the lessee from such a liability, they would have included more apt language to express that intent. *Id.* at 466.

In *Winkler v. Appalachian Amusement Co.,* 238 N.C. 589, 79 S.E.2d 185 (1953), owner Winkler sued the lessee Appalachian for damages as a result of the lessee's negligence in the operation of a popcorn machine which caught fire and caused extensive damage. The lessee argued that the following language in the lease released it from liability: "[T]he lessees agree that they will, at the expiration of this lease, deliver up and return possession of the premises to the lessors in as good order, repair and condition as at present, ordinary wear and tear excepted, and damage by fire ... excepted." The North Carolina Supreme Court held that such language did not relieve the lessee of liability for its own negligence. The court stated that if the parties intended such a contract, they should have so provided in exact terms. 79 S.E.2d at 190–91; *see also Stone Mountain Industries, Inc. v. Bennett,* 112 Ga.App. 466, 145 S.E.2d 591, 593 (1965) ("Fire or other casualty excepted" clause

**300**

within lease provision that lessee agreed to return premises in as good condition and repair as when first received, referred to fire deemed to be casualty and not one caused by lessee's negligence).

■ In the present case, a review of the lease as a whole appears to be consistent with the district court's ruling that TDT was liable for negligently caused fires. The lease language does not clearly indicate, as required by this Court's decision in *Anderson & Nafziger*, that the parties intended to release TDT from liability for its negligent acts. The language in paragraph 5 excepting "damage by fire or unavoidable casualty" as a reason for relieving TDT from its obligation to return the premises in a like condition, refers to accidental events such as fire, earthquakes, floods and other casualties. We interpret this language to mean that accidents and occurrences out of the lessee's control will exempt the lessee from liability, not fires negligently caused by the lessee. Further, paragraph 8 of the lease, entitled "Care of Premises," provides that TDT was required to take care of the premises and was not to allow waste, damage or injury to the property. When paragraph 8 is read in conjunction with the "except by fire" language in paragraph 5, it is clear that Empire did not intend to relieve TDT from liability for fires TDT negligently caused, but only from accidental fires. If the parties did agree to such an exclusion they should have expressly so stated in the lease. Thus, we hold that the district court correctly interpreted the contract as not expressly relieving TDT of liability for fires caused by its negligence.

■ Additionally, the jury's finding of negligence on the part of TDT in destroying the warehouse is supported in the record: TDT destroyed the door securing the building, and then stacked wooden pallets in the doorway, instead of securing it in some reasonable fashion; TDT brought a highly combustible, hazardous material upon the premises which had been punctured and left to ooze across the floor; and there was evidence that TDT was aware that juveniles had entered the warehouse before the day of the fire and that TDT failed to take extra precautions in securing the building from future intrusions.

TDT argues that two Idaho cases, *Safeco Ins. Cos. v. Weisgerber*, 115 Idaho 428, 767 P.2d 271 (1989), and *Bannock Bldg. Co. v. Sahlberg*, 126 Idaho 545, 887 P.2d 1052 (1994), are controlling and that under these cases, TDT is not liable to Empire for negligently caused fires. We find these cases to be factually distinguishable, and therefore, inapplicable to the present case.

In *Safeco Ins. Cos. v. Weisgerber*, although a similar "damage by fire" exculpatory clause was included in the rental agreement between the landlord and the tenant, the precise meaning of such clause and whether the tenant was liable to the landlord for negligently caused fires were not issues in that case, as they are in the present case. *Weisgerber* is an insurance case and involved such issues as whether the tenant was a co-insured of the landlord under the landlord's homeowner's policy with respect to fire damage, and whether the landlord's insurer had a right of subrogation against the negligent tenant. 115 Idaho at 428–29, 767 P.2d at 271–72.

*Bannock Bldg. Co. v. Sahlberg*, is also factually distinguishable from the present case as it, too, is an insurance case. Further, the lease in *Bannock* was an oral lease so no "damage by fire" exculpatory clause was involved at all. Rather, the question before the trial court was whether the tenants were implied co-insureds under the landlord's fire and property insurance for the building, thereby prohibiting subrogation by the lessor's insurer against the lessees under *Weisgerber*. 126 Idaho at 546–47, 887 P.2d at 1053–54. This Court held, in vacating a grant of summary judgment in favor of the lessees, that a question of fact existed as to which party agreed to bear the risk of loss for fire damage. *Id.* at 549, 887 P.2d at 1056.

Thus, we find the issues presented in *Weisgerber* and *Bannock Bldg. Co.* are inapposite to the issue presented here, *i.e.,* whether the "damage by fire" exculpatory clause included in the lease agreement between Empire and TDT released TDT from liability to Empire for fire damage attributed to TDT's negligence.

## B. The District Court Did Not Err In Refusing To Place The Juveniles' And Requipco's Names On The Special Verdict Form And In Refusing To Instruct The Jury On Superseding Cause.

TDT argues that it cannot be found liable for negligently causing the fire without consideration of TDT's tort-based affirmative defenses. We disagree.

■ As noted above, under the terms of the contract, TDT was not exempted from liability for fires negligently caused by TDT. In determining whether TDT was covered under the exculpatory clause in the contract, it was necessary for the jury to determine if TDT had in fact been negligent. Although a finding of negligence was necessary, TDT's liability was analyzed by this Court under contract theory. Since TDT's liability was found under contract principles, we hold that affirmative defenses based in tort are unavailable to TDT. *See Richardson Assoc. v. Lincoln–Devore, Inc.*, 806 P.2d 790, 810 (Wyo.1991) (holding that tort-based defenses are not available when the cause of action was based in contract although subjected to tort challenges); *Centric Corp. v. Drake Building Corp.*, 726 P.2d 1047, 1054 (Wyo. 1986) ("A claim of defense arising out of tort concepts, such as indemnity, is not available where the claim of the plaintiff is premised upon contract."). If the jury had found that TDT was not negligent, TDT would not have been contractually liable as TDT would have been exculpated from liability under the contract. An affirmative tort-based defense, however, is not a defense to contractual liability.

TDT relies upon two cases for the proposition that it was error for the trial court to have refused to place the juveniles' names on the special verdict form so that the jury could determine if the juveniles' conduct caused the fire, and to refuse to place Requipco on the special verdict form for its failure to maintain a proper sprinkler system. The cases cited by TDT, however, are cases in which the Court was determining liability under tort theories. *Hughes v. State of Idaho*, 129 Idaho 558, 929 P.2d 120 (1996); *Vannoy v. Uniroyal Tire Co.*, 111 Idaho 536,

726 P.2d 648 (1986). We do not find these cases applicable. We agree that if TDT had been held liable under a tort theory, TDT would be entitled to present tort-based affirmative defenses. In this case, however, TDT was held liable under a contract theory, even though a component of determining contractual liability involved determining whether TDT was negligent, and therefore, TDT was entitled to present contract-based affirmative defenses, not tort-based defenses. We hold that the trial court did not err in refusing to include the juveniles' and Requipco's names on the special verdict form.

Additionally, TDT argues that the jury's finding of negligence is undermined by the trial court's failure to instruct the jury on superseding, intervening cause. TDT argues that if the jury had been instructed on superseding, intervening cause, it could have concluded that the juveniles caused the fire, not TDT, and therefore, TDT would not have been found negligent and consequently not been held liable under the terms of the contract.

■ We agree that in order to prove TDT was liable, the jury had to find that TDT's acts or omissions were causally related to the fire. *Mico Mobile Sales and Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 411, 546 P.2d 54, 57 (1975). The jury did find that TDT's acts or omissions were a substantial factor in causing the fire. Yet, in order for the juveniles' actions to constitute a superseding, intervening cause, their actions had to be highly extraordinary so as not to be foreseeable by TDT. *Id.* at 412, 546 P.2d at 58. Although a question of foreseeability is usually a question of fact, if the facts can only lead to one reasonable conclusion, this Court may rule upon the issue as a matter of law. *Id.* We believe that upon reviewing the record, it is clear that TDT should have foreseen the juveniles' actions. As stated above, TDT had destroyed the door securing the building and allowed a highly combustible material to ooze across the floor even though it was aware that some juveniles had entered the warehouse on the day before the fire. Despite this knowledge, TDT failed to take any extra precautions to secure the building. It is far from extraordinary that the juveniles entered

the building on the day of the fire and that their actions caused the combustible material to catch fire, destroying the building.

■ Reversible error only occurs when the jury instruction at issue misleads the jury or prejudices the party. *Spence v. Howell,* 126 Idaho 763, 769, 890 P.2d 714, 720 (1995). Since we hold as a matter law that there was not a superseding, intervening cause, the jury was not misled by the lack of the instruction nor was TDT prejudiced. Therefore, the district court did not err by failing to instruct the jury on superseding, intervening cause.

### C. The District Court Did Not Err In Refusing To Instruct The Jury On The Defenses Of Waiver And Estoppel.

TDT next argues that the district court erred in not giving Jury Instruction Nos. 26 and 27 relating to TDT's contractual defenses of waiver and estoppel. These instructions provide as follows:

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 26

The defendant Thermal Dynamic Towers, Inc. is not liable to the plaintiff Empire Lumber Company for the claimed breach of contract if you find that the plaintiff has waived the breach.

Waiver is a voluntary relinquishment of a known right and may be evidenced by conduct, by words, or by acquiescence.

DEFENDANT'S REQUESTED JURY INSTRUCTION NO. 27

The defendant Thermal Dynamic Towers, is not liable to the plaintiff, Empire Lumber Company, for the claimed breach of contract if the affirmative defense of estoppel is established. This defense is established if you find all of the following:

1. The plaintiff by his words or conduct or by his silence when he had a duty to speak represented to the defendant that he was waiving the defendant's breach of contract;

2. The defendant reasonably relied thereon;

3. The defendant materially changed his position; and

4. The change was to the defendant's detriment.

TDT states that in its answer to the complaint it raised the defenses of waiver and estoppel to Empire's claims, based upon an oral agreement that Empire would insure the premises from loss by fire. TDT argues that Empire did insure the property for eighteen months, but then let the insurance lapse without notice to TDT and that, therefore, Empire has waived its right to assert any breach of contract claims against TDT, and is estopped from making such claims against TDT. The district court declined to give either of TDT's requested jury instructions on these theories.

In order to establish "equitable estoppel," TDT would have had to have shown: (1) that Empire made a false representation to TDT or concealed a material fact with actual or constructive knowledge of the truth; (2) that TDT did not know or could not have discovered the truth; (3) that the false representation or concealment by Empire was made with the intent that it be relied upon by TDT; and (4) that TDT relied and acted upon the representation or concealment to its prejudice. *Knudsen v. Agee,* 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996). In order to establish "waiver," TDT would have had to have shown that Empire voluntarily and intentionally relinquished a known right or advantage. *Frontier Federal Sav. & Loan Ass'n v. Douglass,* 123 Idaho 808, 812, 853 P.2d 553, 557 (1993).

■ We hold that the district court correctly refused to give TDT's requested instructions on these theories. Pursuant to the express terms of the lease, neither party was required to procure insurance. Further, even though Empire elected to procure insurance for the first eighteen months of the lease, Clarence Kast admitted that there was no discussion regarding insurance at the time the lease was extended. More importantly, and as the district court ruled, the failure to procure insurance simply cannot be construed as a waiver or estoppel. A lessee is not entitled to rely on the lessor to purchase insurance so that the lessee is free from liability if it negligently causes a fire. Thus,

the facts of this case do not support the defense theories of waiver and estoppel and the district court was correct in its ruling.

Because this opinion affirms the judgment below based upon the contractual theories in the case, we need not address TDT's issues on appeal concerning Empire's tort claims and TDT's tort-based defense theories, *i.e.*, whether Jury Instruction No. 20 was error; whether the district court erred in failing to submit the issue of the juveniles' responsibility to the jury, and to include their names on the Special Verdict; whether the district court erred in failing to submit the issue of Requipco's responsibility to the jury, and to include Requipco on the Special Verdict; and whether the district court erred in not dismissing Empire's tort claims because the act of the juveniles was an intervening superseding cause as a matter of law. Further, these defenses were argued on appeal only in the context of tort liability.

### D. The District Court Did Not Err In Redacting Paragraph 9 Of The Lease, Nor In Giving Jury Instruction Nos. 12 And 13.

TDT claims that the district court erred in redacting paragraph 9 of the lease when the lease was admitted as evidence at trial. Paragraph 9, entitled "Use–Insurance," provided, in pertinent part: "Lessee will insure said premises for fire protection of $___ and on this day furnish a binder naming Lessor as insured ..." The executed lease had the letters "N/A" typed into the blank space signifying the parties' agreement that TDT would not be required to obtain the fire insurance since TDT was only leasing approximately one-third of the warehouse for six months. The latter portion of paragraph 9 provided: "[A]nd the liability insurance shall show Lessor as additionally insured, and Lessee shall pay all premiums." TDT initially requested that the liability insurance clause of paragraph 9 be redacted from the version of the lease admitted into evidence. Empire argued against it and then requested that the fire insurance clause be redacted as well. The district court concluded that both the matters of liability insurance and which party was required to obtain fire insurance, if any, were highly prejudicial and irrelevant with respect to the issue of whether TDT was exempt from liability for fires caused by its negligence. The court thus admitted the lease into evidence, but redacted the entire paragraph 9.

This Court reviews relevancy determinations of the trial court under a *de novo* standard of review. *Mac Tools, Inc. v. Griffin*, 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994); *Lubcke v. Boise City/Ada County Hous. Auth.*, 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). In the present case, the district court's decision to redact paragraph 9 on the grounds that it was irrelevant whether TDT or Empire was required to procure fire insurance, was not in error.

When a contract is clear and unambiguous, the interpretation of that contract is a question of law to be decided by the trial court. *City of Idaho Falls v. Home Indem. Co.*, 126 Idaho 604, 607, 888 P.2d 383, 386 (1995). Here, the primary contractual determination was whether paragraph 5 of the lease exempted TDT from liability for negligently causing the fire that destroyed the warehouse. The district court, finding that the lease was clear and unambiguous, ruled that paragraph 5 did not release TDT from liability for its negligence. We have affirmed the district court's ruling in this regard. Therefore, the issue of which party was obligated to carry fire insurance on the warehouse was irrelevant as it would have possibly led the jury to interpret the lease differently from the district court. Thus, we hold that the district court did not err in redacting paragraph 9 prior to the admission of the lease into evidence.

TDT next argues that the district court erred in giving Jury Instructions Nos. 12 and 13. Instruction No. 12 provided:

A tenant is liable, under either breach of contract theory or negligence theory, for injury to its landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term it shall yield possession "subject to loss by fire."

Instruction No. 13 provided: "Neither party, under the terms of the contract, was required to carry fire insurance."

■■■ The standard of review when reviewing jury instructions on appeal requires this Court to determine whether the jury was properly and adequately instructed. Therefore, the Court must review the instructions and ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues of the case and state the applicable law. *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 76, 910 P.2d 744, 748 (1996); *Mac Tools, Inc.*, 126 Idaho at 196, 879 P.2d at 1129.

With respect to Instruction No. 12, TDT argues that it misconstrues paragraph 5 of the lease by instructing the jury as a matter of law that a tenant is liable under either breach of contract or negligence theories if it negligently caused the fire even though, according to the instruction, the tenant's duty to yield possession at the end of the term was "subject to loss by fire." TDT also claims that this construction was error because it impermissibly mixed two distinct legal theories.

■■■ We see no error in Instruction No. 12. This instruction does nothing more than explain to the jury that by the terms of the lease (paragraph 5) if any damages to the warehouse were the result of an accidental fire, then TDT would not be required to return the property in as good a condition as when it took possession, but if the damage resulted from TDT's negligence, then TDT would not be relieved from that duty. Further, we do not find that this instruction impermissibly mixed contract and tort recovery theories. While it is usually preferable to separate such distinct theories when providing legal instructions to a jury, Instruction No. 12 is not an incorrect statement of the law. Thus, we hold that the district court did not err in giving Instruction No. 12.

■■■ TDT argues that Instruction No. 13 was erroneous because after redacting paragraph 9 of the lease, the district court then told the jury what the redacted paragraph meant. While we find this instruction to be superfluous after the redaction of paragraph 9, Instruction No. 13 is not an incorrect statement. At the time of the fire, neither party was required by the terms of the lease to carry fire insurance. Thus, we hold that although the instruction was unnecessary, it was not reversible error for the district court to have given it to the jury.

In sum, when reviewing all of the instructions given in this case as a whole, including Instruction Nos. 12 and 13, it appears that they fairly and adequately set forth the issues and state the applicable law. Therefore, the district court did not err in giving these instructions.

**E. The District Court Did Not Abuse Its Discretion In Restricting The Use Of Clarence Kast's Testimony, Nor In Admitting The Opinion Testimony Of Wayne Syth And David Klaue.**

■■■ The standard of review on the issue regarding the admissibility of certain witness testimony is whether there was a clear and manifest abuse of discretion by the trial court. *Fowler v. Kootenai County*, 128 Idaho 740, 743, 918 P.2d 1185, 1188 (1996); *Mac Tools, Inc.*, 126 Idaho at 199, 879 P.2d at 1132. The trial court has broad discretion in the admission of evidence at trial and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion. *Mac Tools, Inc.*, 126 Idaho at 199, 879 P.2d at 1132. This standard applies equally as well to the admission of expert testimony. *State v. Rubbermaid, Inc.*, 129 Idaho 353, 357, 924 P.2d 615, 619 (1996).

**1. Clarence Kast.**

TDT argues that the district court erred in restricting the use of Clarence Kast's testimony. Clarence Kast (Kast) and his son were the owners of TDT from its inception until 1991. Kast testified that while TDT's Rathdrum plant was being built, TDT was in need of space in which to manufacture components for its cooling towers. Kast saw a "for lease" sign with a phone number on the gate of Empire's warehouse, and thereafter came into contact with Empire's manager, Alex Shustoff (Shustoff). Kast testified that

during their conversation about leasing the space for TDT's operation, Shustoff told Kast that the sprinkler system in the building was inoperable. This led to a discussion of fire insurance. Kast stated that he told Shustoff that if the sprinkler system did not operate, Empire would have to carry the fire insurance. According to Kast, prior to the execution of the lease, Empire did agree to carry the fire insurance. Kast admitted, however, that when the lease was extended there was no discussion with Shustoff regarding who would carry the insurance. Indeed, Kast admitted the only conversation he had with Shustoff regarding the insurance was at the time the lease was signed in November 1989. The district court limited the use of Kast's testimony to his conversation with Shustoff and whether Kast's conduct in not maintaining the sprinkler system and not being concerned about its operation was reasonable or in breach of the lease. TDT claims that Kast should have been allowed to testify as to an oral agreement between TDT and Empire regarding who would procure the fire insurance.

■ As we held above, because the district court correctly interpreted the lease (specifically paragraph 5), to mean that TDT was not exempt from liability for negligently caused fires, any evidence on the issue of which party was required by the terms of the lease, or by any alleged oral agreement, to carry fire insurance, is irrelevant. Whether TDT or Empire may have been required to obtain fire insurance has no bearing on whether TDT is liable to Empire for the fire damage. Furthermore, even if this testimony had been relevant, it was still properly excluded by the district court from consideration by the jury since Kast admitted that the only discussion regarding fire insurance occurred at the time the lease was entered into, and that there was no discussion about it when the lease was extended.

Thus, we hold that there was no clear and manifest abuse of discretion by the district court in limiting the testimony of Clarence Kast.

### 2. Wayne Syth.

■ Wayne Syth (Syth), Fire Chief of Hayden Lake Fire Protection District, testified at trial as an expert witness for Empire. Syth was allowed to read to the jury certain sections of the Uniform Fire Code (U.F.C.) and then render an expert opinion concluding that TDT had violated the U.F.C. in various ways, including in its storage of Philly Clad. TDT claims that the admission of this testimony was error.

The U.F.C. is designed to provide "minimum standards for the protection of life and property from fire . . . in the state of Idaho." I.C. § 41–253. In *Stevens v. Fleming*, 116 Idaho 523, 777 P.2d 1196 (1989), this Court held that while the U.F.C. was not applicable to that case as the building in question predated its enactment, the U.F.C. could prove useful in setting forth minimum standards:

When applicable, specific statutory provisions such as the Uniform Fire Code may prove useful in delineating minimum standards which are binding upon every owner of a rented premises. Such onpoint code provisions provide a ready measure of the base standard of care and failure to meet such standard may be negligence *per se* if the statutes or ordinances were designed to prevent the type of harm which occurred.

*Stevens,* 116 Idaho at 526, 777 P.2d at 1199.

During the jury instruction conference in the present case, the district court concluded that the U.F.C. licensing provision did not apply to the amount of Philly Clad which TDT had stored on the premises, and declined to give Empire's proposed negligence *per se* instruction. Thus, although the court may have ultimately decided that Syth should not have testified with respect to any correlation between the U.F.C. and the presence of Philly Clad, the jury was never instructed on this issue.

The testimony was permissible, however, for a more general reason. TDT agreed in paragraph 8 of the lease that its use of the warehouse would comply with the rules, regulations and laws of the state of Idaho:

The Lessor shall not be called upon to make any improvement or repair of any

kind upon said premises and said premises shall at all times be kept and used in accordance with the laws of the state of Idaho and in accordance with all directions, rules and regulations of the health officer, fire marshal, building inspector or other proper officer of the city of Post Falls, Id. at the sole cost and expense of said Lessee.

In other words, TDT agreed that it would maintain Empire's property in accordance with the minimum standards set forth by the U.F.C. Thus, pursuant to *Stevens v. Fleming,* the district court properly allowed Syth to testify as to the minimum standards provided by the U.F.C. The court therefore did not abuse its discretion in allowing this testimony.

### 3. David Klaue.

■ David Klaue (Klaue), President of Empire and son of the founder and CEO of the company, testified to damage valuations resulting from the loss of the building based upon his investment value theory of valuation. Klaue first testified that the property produced an annualized rental income of $72,000. He also testified that at a capitalization rate of 10%, the $72,000 yearly income would yield a gross valuation to the warehouse of $720,000. Klaue then estimated the value of the land, which still remained, to be $196,000, and rounded this to $200,000. Subtracting the land from his investment value total ($720,000 minus $200,000), Klaue arrived at a damage valuation of the warehouse of $520,000. TDT claims that Klaue's method of valuation was error and should not have been admitted.

We hold that the district court did not err in admitting Klaue's testimony. This Court has followed the rule that the owner of property is qualified to testify to its value. *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.,* 127 Idaho 41, 43, 896 P.2d 949, 951 (1995); *see also Weaver v. Village of Bancroft,* 92 Idaho 189, 193, 439 P.2d 697, 701 (1968). In the present case, Klaue testified as to the amount for which he would be willing to sell the building. His testimony did not merely state his conclusions as to the amount of monetary damage he sustained, but also set forth the facts and reasoning behind his valuation allowing the jury to determine damages based on these facts and others presented at trial. Further, there was other expert testimony regarding the value of the building, and in the Special Verdict, the jury did not accept Klaue's value determination. Instead, the jury found the warehouse to be worth $400,000.

Klaue also testified as to Empire's lost income. Klaue stated that it would take 28 months to rebuild the building, and that Empire suffered lost income in the amount of $6,000 per month × 28 months, or $168,000. The jury awarded Empire $140,000 for lost income. TDT claims that it was error for Klaue to testify as to lost profits based on gross rents without first testifying to the expenses related to the property, such as taxes, insurance, heat, roof repairs, etc. Thus, TDT argues that the testimony should have reflected net lost profits, and because it did not, Empire's damages were speculative and uncertain.

■ We hold that Empire's lost profit damages evidence was not speculative since pursuant to the manner in which Empire leased the warehouse, Empire was not responsible for such items as repairs, utilities and insurance. Therefore, other than the expense of taxes and because the building was paid for, any amount earned as rent on the warehouse was a net amount.

Thus, we hold that the district court did not abuse its discretion in admitting the valuation and lost profit testimony of Klaue. The court found Klaue to be an intelligent and sophisticated witness with regard to business and value, and quite capable of arriving at the fair market value of what a willing buyer would pay and what a willing seller would accept for the property.

### F. Empire Is Entitled To Costs And Attorney Fees Below And On Appeal.

The district court awarded Empire $9,460.95 in costs as a matter of right pursuant to I.R.C.P. 54(d)(1)(C). The court also awarded $114,416.00 in attorney fees to Empire as the prevailing party based upon paragraph 20 of the lease and I.R.C.P. 54(e)(1)

and I.C. § 12–121. Paragraph 20 of the lease provided:

> If by reason of any default on the part of the Lessee it becomes necessary for the Lessor to employ an attorney, or in case Lessor shall bring suit to recover any rent due hereunder, or for breach of any provision of this Lease, or to recover possession of the leased premises, of if Lessee shall bring any action for any relief against Lessor, declaratory or otherwise, arising out of this Lease, and Lessor shall prevail in such action, then and in any of such events Lessee shall pay Lessor a reasonable attorney's fee and all costs and expenses expended or incurred by the Lessor in connection with such default or action.

TDT argues that the award of costs and attorney fees to Empire should be reversed since the exclusion for "damage by fire" in paragraph 5 of the lease precludes any contract action against TDT.

■ Because we affirm the district court on the contractual issues in this case and hold that paragraph 5 of the lease does not exempt TDT from liability for fires it negligently caused, Empire is entitled to the award of costs and attorney fees pursuant to the lease. *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 568–69, 836 P.2d 511, 514–15 (1992) ("[W]here there is a valid contract between the parties which contains a provision for an award of attorney fees and costs, the terms of that contractual provision establish a right to an award of attorney fees and costs."). Thus, the district court's award of costs and attorney fees to Empire based upon paragraph 20 of the lease is affirmed.

We also award costs and attorney fees to Empire on appeal based upon paragraph 20 of the lease and I.A.R. 41.

## IV.

### CONCLUSION

We hold that the district court correctly ruled that the except for "damage by fire" exclusion in paragraph 5 of the lease did not relieve TDT from liability to Empire for fires caused by TDT's negligent actions, and that the court properly refused to give jury instructions on waiver and estoppel.

We further hold that the district court did not err in redacting paragraph 9 of the lease, nor in giving Jury Instruction Nos. 12 and 13, since the issue of which party, if any, was required to procure fire insurance is wholly irrelevant to the disposition of this case.

We also hold that there was no showing of a clear and manifest abuse of discretion by the district court in its restriction of the use of Kast's testimony nor in its admission of the opinion evidence of Syth and Klaue.

Finally, we affirm the district court's award of costs and attorney fees below, and award costs and attorney fees on appeal pursuant to paragraph 20 of the lease and I.A.R. 41(d).

Accordingly, the judgment of the district court is affirmed.

Chief Justice TROUT and Justice WALTERS, CONCUR.

### Justice JOHNSON, DISSENTING AND CONCURRING IN THE RESULT

I respectfully dissent from part III(A) of the Court's opinion (The District Court Correctly Ruled That Paragraph 5 Of The Lease Did Not Relieve TDT Of Liability For Fires Caused By Its Negligent Actions).

I concur in the result of the portion of part III(B) of the Court's opinion (The District Court Did Not Err In Refusing To Place The Juveniles' and Requipco's Names On the Special Verdict Form And In Refusing To Instruct The Jury On Superseding Cause) that deals with refusing to place the names of the juveniles and Requipco on the special verdict form.

I respectfully dissent from the portion of part III(B) of the Court's opinion that deals with refusing to instruct the jury on intervening and superseding cause.

### PARAGRAPH 5 RELIEVED TDT OF LIABILITY FOR THE FIRE.

In my view, the analysis contained in part III(A) of the Court's opinion incorrectly fails to consider all the pertinent provisions of the lease and erroneously relies on authorities from other jurisdictions, when decisions of

this Court provide the correct focus for the analysis.

In *Safeco Ins. Cos. v. Weisgerber,* 115 Idaho 428, 767 P.2d 271 (1989), a case in which a tenant was alleged to be negligent in causing a fire that damaged leased premises, the Court considered a lease provision similar to paragraph 5 of the lease between Empire and TDT, and concluded:

> When a tenant agrees to maintain the property in a good state and condition with "damage by fire excepted," a landlord should reasonably be expected to bear the burdens associated with damage by fire and insure against that eventuality.

*Id.* at 431, 767 P.2d at 274.

In addition to paragraph 5 of the lease between Empire and TDT, the Court should also have considered paragraph 9, which states:

### USE–INSURANCE

9. The Lessee shall conduct and carry on in said premises, continuously during each and every business day of the term hereof, the business for which said premises are leased, and shall not use the premises for illegal purposes. The Lessee agrees that no stock of goods will be carried, or anything done in or about the premises which will prevent Lessee from obtaining insurance as herein required. Lessee will insure said premises for fire protection of $*NA* and on this day furnish a binder naming Lessor as insured; and the liability insurance shall show Lessor as additionally insured, and Lessee shall pay all premiums.

In *Bannock Bldg. Co. v. Sahlberg,* 126 Idaho 545, 887 P.2d 1052 (1994), the Court said:

> [W]e hold that on a case-by-case basis, the trier of fact must focus on the terms of the lease agreement itself to determine what the reasonable expectations of the parties were as to who should bear the risk of loss for fire damage to the leased premises. With respect to the present case, we hold that summary judgment must be vacated and the case remanded to the district court to determine the issue of which party agreed to bear the risk of loss for fire

damage, *including who should bear that risk if the damage is determined to be caused by negligent acts of the tenant.*

*Id.* at 549, 887 P.2d at 1056 (emphasis added). In my view, the Court should focus on both paragraphs 5 and 9 in deciding which party bore the risk of loss if the lease premises were damaged by fire, even a fire caused by TDT's negligence.

Paragraph 5 provides that TDT is not responsible for "reasonable wear and tear and damage caused by fire or unavoidable casualty." If "damage caused by fire" did not include fire caused by TDT's negligence, the term "unavoidable casualty" would be prefaced by the word "other," making the exclusion read "damage caused by fire or *other* unavoidable casualty." As it reads, paragraph 5 does not limit the exclusion of TDT's responsibility to unavoidable fires.

The decisions of this Court concerning the limitations on agreements limiting liability for negligence do not dictate a different result. In *Anderson & Nafziger v. G.T. Newcomb, Inc.,* 100 Idaho 175, 595 P.2d 709 (1979), the Court said:

> It is a general rule of this state and the majority of American jurisdictions that a party may contract to absolve himself from certain duties and liabilities under a contract subject to certain limitations. However, it is nevertheless well established that courts will look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document.

*Id.* at 178, 595 P.2d at 712 (citations omitted). In *Anderson,* the party seeking to take advantage of the provision limiting liability had prepared the exculpatory provision. In the present case, Empire, not TDT, prepared the lease. The circumstances in the present case do not call for the Court to rewrite the provision limiting TDT's liability that was prepared by Empire.

Also, contrary to the Court's opinion, paragraph 8 of the lease concerning care of the premises does not require a different reading of paragraph 5. In *Miller v. Belknap,* 75 Idaho 46, 266 P.2d 662 (1954), the Court said:

It is axiomatic that 'a lease, like any other contract, is to be construed to give effect to the intention of the parties. In so doing, the courts generally hold that covenants for maintenance and repair and covenants to surrender in good condition are to be construed together, and, so construed, the covenant to surrender in good condition, wear and tear due to reasonable use excepted.

"The general force and effect of a covenant by the lessee to make all repairs to the leased premises during the term of the lease is restricted and limited by a surrender clause containing an exception as to damage by fire and ordinary wear and tear. The two provisions will be construed together as imposing upon the lessee an obligation to make all such repairs as may be necessary for the preservation of the premises in the condition in which he received them from his lessor, except repairs required by reason of ordinary wear and tear, or by reason of fire. Ordinary wear and tear include any usual deterioration from the use of the premises and by lapse of time." 45 A.L.R. Annotation 70.

*Id.* at 52–53, 266 P.2d at 665–66.

In my view, paragraph 5 excluded TDT's liability for damage to the leased premises caused by fire.

## IT IS NOT NECESSARY TO ADDRESS THE TRIAL COURT'S REFUSAL TO INCLUDE ON THE SPECIAL VERDICT FORM THE NAMES OF OTHERS WHO WERE POTENTIALLY NEGLIGENT.

In my view, the analysis in the portion of part III(B) of the Court's opinion in which the Court addresses the trial court's refusal court to include on the special verdict form the names of the juveniles and of Requipco is not necessary. In answering the questions contained in the special verdict form, the jury found that Empire was not negligent, but that TDT was negligent and that its negligence was the proximate cause of the damages sustained by Empire. Therefore, under the "individual rule" adopted by the Idaho legislature when it enacted compara-

tive negligence, even if others who were potentially negligent had been included on the special verdict form, TDT would have been liable to Empire for its damages. *Beitzel v. Orton,* 121 Idaho 709, 713, 827 P.2d 1160, 1164 (1992).

## THE FORESEEABILITY OF THE JUVENILES' ACTIONS IS A QUESTION OF FACT THAT SHOULD HAVE BEEN SUBMITTED TO THE JURY.

In my view, the question of foreseeability that the Court's opinion treats as a matter of law is a question of fact that should have been submitted to the jury as part of instructions concerning TDT's defense that the actions of the juveniles were an intervening and superseding cause. I am unable to agree that the evidence in this case leads to only one reasonable conclusion—that TDT should have foreseen that the juveniles would set the fire. The evidence in this case presents the opposite circumstance from that posed in *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.,* 97 Idaho 408, 546 P.2d 54 (1975), the case cited in support of this portion of the Court's opinion. In *Mico Mobile,* instead of ruling that the only reasonable conclusion was that the act in question should have been foreseen, the Court concluded: "Mico's act of placing the methanol in a fresh water system was in violation of state law, mobile home industry standards, and plumbing trade practices; thus, its act was an extraordinary event which was not foreseeable to Skyline." *Id.* at 414, 546 P.2d at 60. Ruling out foreseeability under the circumstances in *Mico Mobile* is a distinctly different matter than concluding as a matter of law that it exists in the present case.

Although there was evidence that TDT was aware that juveniles had access to the building before the fire, there was also evidence that the fire started when the juveniles entered the building through an unlocked door and played a game in which they placed wadded-up newspaper inside a plastic sack, set the paper on fire, and then tossed it back and forth to one another in a game of "chicken." The plastic sack landed in some pallets that had been stacked by TDT employees to block an open doorway, which had been cre-

ated several days earlier when the overhead door had been knocked off its rollers by a forklift operated by a TDT employee. Even though the juveniles attempted to stomp out the fire, the sack set the pallets on fire, which spread up the pallets to the roof. In my view, the question of foreseeability was clearly one for the jury, and not this Court, to decide.

### Justice SCHROEDER, DISSENTING.

I join in Justice Johnson's dissent and also dissent on the basis that failure to include the juveniles' names and Requipco on the special verdict was error because it limited the scope of the jury's consideration on causation.

The Court has determined the case based upon contract principles and, consequently, holds that tort-based defenses are not available to TDT. However, to hold TDT liable for breach of contract it was necessary to determine that TDT was negligent and that its negligence caused the damage. The jury should have been allowed to consider the negligence of the juveniles who actually started the fire and the possible negligence of Requipco to determine if their negligence was actually the cause of damage to Empire. If given the question directly on the special verdict form, the jury might have determined that the juveniles' or Requipco's negligence was the cause of damages to Empire. Under the Court's analysis, the liability of TDT for the damage to Empire was dependent upon a determination that TDT was negligent and that its negligence was the cause of that damage. A finding of negligence by TDT is inherent in the jury's verdict, but it is speculation to say what the jury might have done or what the verdict means when the jury did not have a full opportunity in the verdict to address the question of whose negligence caused the fire and the damage. The Court determines as a matter of law an issue that is routinely held to be a question for the jury.

The trial court had a duty to instruct upon all of TDT's theories and defenses which find any support in the evidence, *Spence v. Howell,* 126 Idaho 763, 890 P.2d 714 (1995), and the facts must be construed most favorably to the party requesting the instruction, in

this case TDT. *Doty v. Bishara,* 123 Idaho 329, 848 P.2d 387 (1992). Failure to submit a party's defenses and theories to the jury is reversible error. *Garrett Freightlines, Inc. v. Bannock Paving Co.,* 112 Idaho 722, 735 P.2d 1033 (1987).

The Court made this statement in *Vannoy v. Uniroyal Tire Co.,* 111 Idaho 536, 726 P.2d 648 (1985):

In the present case, based upon the evidence submitted by plaintiffs' own expert and the standard applied in *Fouche v. Chrysler, supra,* [107 Idaho 701, 692 P.2d 345 (1984)] the jury would have been entirely justified in allocating to the mounting machine manufactured by Coats, and to the wheel rim manufactured by Kelsey–Hayes, some or all of the responsibility for proximately causing the damages to the plaintiffs. Accordingly, it was reversible error for the trial court to refuse to include them on the jury verdict form. *Lasselle v. Special Products Co.,* 106 Idaho 170, 677 P.2d 483 (1983).

*Id.* at 543, 726 P.2d at 655.

*Vannoy* was a tort case based on a theory of strict liability, not a contract case, but the principle is the same. In this case the jury might have allocated all of the negligence that proximately caused the fire to the juveniles. There was also evidence that the other tenant on the premises, Requipco, failed to maintain the pump or sprinkler system, and it should also have been on the special verdict. Even accepting the Court's contract analysis, the failure to place the other non-parties on the special verdict calls into question the negligence finding by the jury as to TDT and requires the reversal of the contract claim which relies upon that finding.

The jury's negligence finding is further undermined by the trial court's failure to instruct the jury on TDT's defense of superseding, intervening cause. Again, while this is a concept applicable in tort, it has application when the contract claim is based on negligence. Even in contract terms, there must be a relation between the breach and the damage. A breach that is not the cause of damage does not result in liability. The jury could well have concluded that the

cause of damage to Empire was the juveniles trespassing and playing catch with a burning sack or Requipco's failure to maintain the pump or sprinkler system. It was an issue of fact for the jury. The verdict form unduly limited the jury's consideration.